## STINER & SON *et al. v.* UNITED STATES (No. 453).[1]

1. DRESSED LAMBSKINS.

Dressed lamb and kid skins finished so as to be suitable for making gloves might be designated as either "lambskins dressed and finished" or as "glove leather"; but as the last is the more specific designation it must prevail, and the more certainly since otherwise it would be to deny any significance to "glove leather" in the law. The importation is not dutiable as sheep and goat skins (including lamb and kid skins) dressed and finished under paragraph 451, tariff act of 1909, nor as grain, split, or buff leather under paragraph 450 of that act, but is dutiable as glove leather under paragraph 451.

2. ERROR WITHOUT INJURY.

It was error for the board to predicate an opinion on testimony taken in a former case, but as the error relates to a question of fact not essential to the decision of this case, it is error without injury.

### United States Court of Customs Appeals, April 24, 1911.

APPEAL from a decision of the Board of United States General Appraisers, G. A. 7064 (T. D. 30766).

*Brown & Gerry* for appellants.

*D. Frank Lloyd*, Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

In the months of August and October, 1909, the appellants imported into this country a number of consignments of dressed and finished lambskins. The collector classified them as "glove leather" and held them to be dutiable at 20 per cent ad valorem, under paragraph 451 of the act of 1909.

The appellants duly filed their protest to this ruling, and claimed that such of the importations as had entered before October 1 were dutiable at 15 per cent ad valorem as "lambskins dressed and finished" under paragraph 451, and that such as had entered after October 1 were dutiable at 7½ per cent ad valorem as "grain leather" under paragraph 450 of the same act.

The Board of General Appraisers heard the protest upon evidence, and held with the collector. The appellants now present the question to this court and pray for a reversal of the board's decision.

The paragraphs which are above referred to read as follows:

450. Hides of cattle, raw or uncured, whether dry, salted, or pickled, shall be admitted free of duty: *Provided*, That on and after October first, nineteen hundred and nine, grain, buff, and split leather shall pay a duty of seven and one-half per centum ad valorem; that all boots and shoes, made wholly or in chief value of leather made from cattle hides and cattle skins of whatever weight, of cattle of the bovine species, including calfskins, shall pay a duty of ten per centum ad valorem; that harness, saddles and saddlery, in sets or in parts, finished or unfinished, composed wholly or in chief value of leather, shall pay a duty of twenty per centum ad valorem.

---

[1] Reported in T. D. 31550 (20 Treas. Dec., 891).

451. Band, bend, or belting leather, rough leather, and sole leather, five per centum ad valorem; dressed upper and all other leather, calfskins tanned or tanned and dressed, kangaroo, sheep and goat skins (including lamb and kid skins) dressed and finished, other skins and bookbinders' calfskins, all the foregoing not specially provided for in this section, fifteen per centum ad valorem; chamois skin, twenty per centum ad valorem; skins for morocco, tanned but unfinished, five per centum ad valorem; patent, japanned, varnished, or enameled leather weighing not over ten pounds per dozen hides or skins, twenty-seven cents per pound and fifteen per centum ad valorem; if weighing over ten pounds and not over twenty-five pounds per dozen, twenty-seven cents per pound and eight per centum ad valorem; if weighing over twenty-five pounds per dozen, twenty cents per pound and ten per centum ad valorem; pianoforte leather and pianoforte-action leather, and glove leather, twenty per centum ad valorem; leather shoe laces, finished or unfinished, fifty cents per gross pairs and ten per centum ad valorem; boots and shoes made of leather, fifteen per centum ad valorem: *Provided*, That leather cut into shoe uppers or vamps or other forms, suitable for conversion into manufactured articles, and guaffre leather, shall pay a duty of ten per centum ad valorem in addition to the duty imposed by this paragraph on leather of the same character as that from which they are cut.

It will be observed that the foregoing paragraphs make separate classes of "grain leather" dutiable at $7\frac{1}{2}$ per cent ad valorem after October 1, 1909, and "lambskins dressed and finished" dutiable at 15 per cent ad valorem, and "glove leather" dutiable at 20 per cent ad valorem; and the only question upon the merits is, To which of these three classes do the importations belong? There is also a question of procedure made in the case by a ruling of the board excluding certain testimony proposed by appellants, to which ruling appellants excepted. That question will be considered later in this opinion.

There are certain relevant facts which may be stated as being either conceded by the parties or as being established by the proofs beyond serious controversy.

The importations are all lambskins. The skins are all so dressed and finished as to be fit and suitable to be made into gloves. They are soft, elastic, and pliable, which are characteristics always present in glove leather. In the trade such skins were frequently called simply lambskins, although that name if used alone would hardly describe them with sufficient particularity to serve as an order or invoice. The name "glove leather" was also frequently used by the trade as applicable to the skins, but this, too, lacked definiteness and required further description to serve as an order or invoice. These names were not strictly trade names of a definite or exclusive character; the articles were called lambskins because they were the skins of lambs, and they were called glove leather because they had been tanned, finished, and dressed to be suitable for the making of gloves. Such names were therefore quite as apt to be used by laymen as by experts of the trade. There were also various subsidiary names applied to the skins, indicating different conditions produced by dressing and finishing, such as suede, nappa, glace, kid, and chamois. These were

real trade names and had definite and specific meanings which were well known to all engaged in the business.

More than half of all the lambskins used in manufacture are used in the making of shoes. Those so used are dressed and finished in a different manner from these at bar, the leather for shoes requiring a firm surface, while glove leather must be soft and flexible. The two kinds of leather are therefore clearly distinguishable from one another.

Of the lambskins finished for gloves a small fraction, perhaps 10 per cent, are in fact finally used in the making of other articles, such as jewelry bags, ladies' belts, pocketbooks, and bookbindings. But this use is relatively so small that the skins so prepared are nevertheless all called glove leather, notwithstanding the fact that some might actually be used for other purposes.

On the other hand, leather gloves are not all made of lambskins. The skins of dogs, goats, sheep, deer, colts, and pigs are also used for this purpose. However, the proportion of such other skins used in glove manufacture is so small that probably more than 90 per cent of leather gloves are made from lambskins and less than 10 per cent from all others combined.

It appears from these statements that the skins in question might aptly be called by either of two of the designations contained in paragraph 451—that is, "lambskins dressed and finished" or "glove leather"—and that they were in a general way known to the trade by each of these titles. The third classification, namely, "grain leather," provided for by paragraph 450, will be considered later.

As between the two classifications above named that one must prevail which is the more specific and which seems upon the paragraph at large to carry more nearly into effect the legislative intent.

Which, then, is the more specific designation "lambskins dressed and finished" or "glove leather"?

The primary term denominative of the articles is lambskins, but this term alone does not describe either of the two classes as named in the paragraph. The one class requires that the skins shall be dressed and finished before they shall be included within it; the other class requires that they shall also be glove leather before they shall be included within it. That is to say, in order to come within the one class the lambskins need simply to be dressed and finished: but in order to come within the other class they must be dressed and finished in a particular manner, namely, for glove leather. The former classification is therefore the more comprehensive. The latter engrafts an important limitation upon it, and is the more specific of the two. For, as has been stated, not more than half of all the lambskins which are dressed and finished are made into glove leather. The latter class is therefore but a subdivision of the former. Therefore as between these two designations glove leather must prevail.

In the paragraph the words "not specially provided for in this section" follow and modify the provisions for "lambskins dressed and finished," no such provision being added to the clause relating to glove leather. This also tends to sustain the argument that glove leather was regarded as a class or subdivision of lambskins dressed and finished, for it is fully consistent with such a claim but inconsistent with the claim that so large an exception as lambskins had been made in the section to the class composed of glove leather.

The appellants also contend that the importation entering after October 1, 1909, was composed of lambskins so treated as to be "grain leather," and therefore dutiable as such at 7½ per cent ad valorem under the provisions of paragraph 450. They contend that grain leather was a trade term used to designate all leather which was dressed and finished so as to preserve the grain or hair side of the skins, and that the importation referred to belonged to that class.

Having determined that glove leather is more specific than lambskins dressed and finished, the former classification must now be compared with grain leather. For this purpose only appellants' definition of the term will be used. A comparison of these terms with reference to this subject matter discloses them to be cross divisions, and makes it difficult to determine which is the more specific of the two, although appellants' definition of grain leather makes that class a very general and comprehensive one. But one very important question immediately suggests itself, and that is whether the provision relating to grain leather in paragraph 450 is not limited to such leather as is made from the hides of cattle. If so, it would have no application to this case. That paragraph will be copied again in order to present the question which is now suggested:

450. Hides of cattle, raw or uncured, whether dry, salted, or pickled, shall be admitted free of duty: *Provided,*That on and after October first, nineteen hunderd and nine, grain, buff, and split leather shall pay a duty of seven and one-half per centum ad valorem; that all *boots* and shoes, made wholly or in chief value of leather made from cattle hides and cattle skins of whatever weight, of cattle of the bovine species, including calfskins, shall pay a duty of ten per centum ad valorem; that harness, saddles and saddlery, in sets or in parts, finished or unfinished, composed wholly or in chief value of leather, shall pay a duty of twenty per centum ad valorem.

However, it is not necessary to decide that question in this case, for the present decision does not really depend upon its answer, there being other sufficient grounds upon which to predicate it. It appears that another case involving that question is upon the docket and will be submitted to the court at a later term; and it seems right to hear the arguments in that case upon this question before its final decision.

The consideration which seems conclusive upon the issue between glove leather and grain leather, as well as lambskins dressed and finished, is the effect which either construction would have upon the paragraphs at large. Glove leather is made dutiable at 20 per cent ad

valorem. If all grain leather and all lambskins are ruled out of that classification there would be practically nothing left within it. More than 90 per cent of glove leather is made up of lambskins dressed and finished, leaving less than 10 per cent remaining; and this residue would practically all be grain leather, according to appellants' definition of that term; so that if lambskins and grain leather be both subtracted from the classification it would be destroyed. Such an interpretation is unreasonable and its adoption would not be justified by a comparison of the various parts of the two paragraphs.

Upon the merits of the case the decision of the board should therefore be affirmed, and this leads to a consideration of the question of evidence saved by the exceptions of the appellants.

The witness Henry M. Van Houten was called by appellants and examined in chief as their witness. He testified that he was the examiner of merchandise at the port of New York and as such passed upon harness, sporting goods, and saddles, including pigskin saddles. He was then asked by appellants to state, "Under what paragraph of the act are you classifying such merchandise if the importation was made subsequent to October 1, 1909?"

The Government objected to this question, and the objection was sustained, to which appellants excepted. The appellants thereupon proposed to state as part of the record the answer which they expected the witness to make to the question; this was ruled out by the board, to which appellants again excepted.

This latter ruling is not consistent with approved procedure. Where a question is propounded to a witness, and the board sustains an objection to it, the party putting the question should be allowed to state the answer which he expects the witness to give. The object of this is to enable the reviewing court to determine whether the testimony would be substantial and relevant. The question itself may not always be sufficient to indicate this. However, in this case no prejudice resulted from the method of procedure adopted by the board, because the question is plainly irrelevant and no competent answer could be given to it. The question called for certain acts of the witness which were only pertinent in that they tended to show his interpretation of the law relating to the duty upon certain articles which were not included within the importation. For both these reasons the question could not be other than incompetent.

It may also be noted that the answer expected from the witness is practically incorporated within the record by the stenographer's copy of counsel's question and proposal. Therefore, this question of procedure assumes no importance in the case.

It seems proper to add an additional comment upon the procedure adopted by the board in its trial and decision of the case. The appellants had made the claim that the importation of October 5

was composed of grain leather, and that it was dutiable as such at 7½ per cent ad valorem under paragraph 450. Testimony was introduced by appellants at the hearing tending to sustain their claim that the leather was so known in the trade. The board, however, decided that the leather was not grain leather and predicated their decision upon testimony which had been taken in a former case and which was not introduced in this case at all and probably is not saved in any obtainable form. Such testimony is at least no part of this record. Appellants assign this procedure of the board as error, and it is very obvious that such procedure was erroneous. This court can not review the proceedings of the board if the board's decision is to be made upon testimony not incorporated in the record.

However, in this case the error, though very palpable, is not prejudicial, because it relates only to the question of fact as to whether the importation was grain leather or not, and that question is not essential to the decision of the case. For even assuming that the importation was grain leather, nevertheless it was also glove leather, and the latter classification prevails for the reasons above given.

The decision of the board is therefore *affirmed*.

MONTGOMERY, Presiding Judge, and SMITH, BARBER, and DE VRIES, Judges, concur.