UNITED STATES *v.* STINER & SON (No. 1756).[1]

CHAMOIS-SKIN GLOVE LEATHER.

Chamois skins (invoiced as glove leather, natural dole and white dole) which have been subjected to a special treatment to fit them for use as glove leather, such treatment being shown to render them not adaptable in a commercial sense to any of the other uses to which chamois skins are commercially put, are dutiable as "glove leathers" and not as "chamois skins" (par. 359, tariff act of 1913).

United States Court of Customs Appeals, March 26, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7934 (T. D. 36557).

[Affirmed.]

*Bert Hanson*, Assistant Attorney General (*Charles D. Lawrence*, special attorney, of counsel), for the United States.

*Allan R. Brown* for appellees.

[Oral argument Feb. 9, 1917, by Mr. Hanson and Mr. Brown.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

In this case the merchandise the classification of which is in controversy was described on the invoice as glove leather, natural dole and white dole. It was assessed for duty at the rate of 15 per cent ad valorem under paragraph 359 of the act of 1913 as chamois skin and is claimed to be dutiable at 10 per cent only, under the same paragraph, as glove leather. A further claim was made before the board

---

[1] Reported in T. D. 37105 (32 Treas. Dec., 361).

under paragraph 530, but as the claim was disallowed and the Government alone appeals, that claim is not here for consideration.

The board found that chamois skin made from the fleshy side of sheepskin appears in the stages of its manufacture into glove leather in three forms: First, what is called crust chamois, which is simply tanned and in that condition is ready for use in cleaning automobiles, carriages, harness, etc.; in another stage of development there is produced a chamois skin which is sold to the drug trade, but which has not been so processed as to make it suitable for glove leather; the final process consists of a special treatment, that is, the chamois skin as it appears in its first stage is fat liquored, sueded, and knee staked.

The skins in question in the latter case have been so treated, and the testimony fairly sustains the claim of the importers that by reason of such special treatment they are not adaptable in a commercial sense to any of the other uses to which chamois skins are commercially put. Undoubtedly they might be so used, except for the fact, as appears by the testimony, that the price would be prohibitive for the reason that chamois skin, which has not undergone this special treatment can be produced more cheaply, and in actual experience it supplies the drug trade.

The Board of General Appraisers, dealing with a similar question in G. A. 7621 (T. D. 34861), passing upon the question of whether certain doeskin, a form of chamois specially prepared for the material out of which to make chamois gloves, was to be classified as chamois skin, said:

It is our view that if a leather has been especially prepared, either by original tanning or by peculiar dressing and finish, to make it especially useful for making gloves and consequently unfit, practically or commercially, for any other use, it must be classified as glove leather and take duty accordingly, regardless of whether it looks like some other kind of leather or may in exceptional instances be used for other purposes than glove making.

And here in this case the board held that "by reason of these skins being so treated as to make them suitable in a commercial sense only for glove making, they should be classified as glove leather and take duty accordingly."

This court, speaking through Judge Martin, in Stiner *v.* United States (1 Ct. Cust. Appls., 545, 547; T. D. 31550) said:

The primary term denominative of the articles is lambskins, but this term alone does not describe either of the two classes as named in the paragraph. The one class requires that the skins shall be dressed and finished before they shall be included within it; the other class requires that they shall also be glove leather before they shall be included within it. That is to say, in order to come within the one class the lambskins need simply to be dressed and finished; but in order to come within the other class they must be dressed and finished in a particular manner, namely, for glove leather. The former classification is therefore the more comprehensive. The latter engrafts an important limitation upon it, and is the more specific of the two.

We think this language is quite applicable to the present case. As it was related to that case under the statute of 1909 the term "lambskins, dressed and finished" was quite as specific as the term "chamois skin" employed in the present statute, and yet the court was of opinion that the term "glove leather" was under that statute the more specific. In the act of 1913 the provisions of paragraph 359 are:

Chamois skins, 15 per centum ad valorem; pianoforte, pianoforte action, enameled upholstery leather, and glove leathers, 10 per centum ad valorem.

It may well be said that the distinction between chamois skin used for ordinary purposes and glove leather was made for the purpose of conforming to the plan of reducing the cost of gloves and to harmonize with the reduction of 10 per cent on imported gloves, making a corresponding reduction in material. This purpose might have been the occasion for using the plural word in providing for glove leathers, thus making the provision for glove leathers comprehensive enough to include all classes of glove leather, even though such leather, in the absence of such specific provision, might have been classifiable under another name, as, for example, chamois skin. The intent of Congress, we think, was made manifest and that the board correctly interpreted it.

*Affirmed.*