RANDOLPH DODGE AND WILLIAM H. MASSON *v.* UNITED STATES

(No. 3676)[1]

[1]T. D. 47035.

United States Court of Customs and Patent Appeals, April 16, 1934

*B. A. Levett* for appellants.

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument February 12, 1934 by Mr. Levett and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court. overruling certain protests of appellants against the classification and duty assessment, by the Collector of Customs, of certain rugs made of cocoa fiber, sometimes described as Mourzouk rugs. The importations involved in the appeal were made while the Tariff Act of 1922 was in effect. The merchandise was invoiced as cocoa porch rugs.

Certain of appellants' assignments of error are leveled at rulings made by the trial court during the taking of the testimony in the case. In order clearly to understand these contentions and our view of their merits, it seems essential that a statement of the issues be first made.

The articles are of different sizes, ranging from approximately 29 by 54 inches to approximately 9 by 12 feet. An official sample is in evidence, together with exhibits (introduced by the Government) illustrating types of all-wool ingrain carpets and a type of ingrain rug or carpet made of cotton and paper.

The collector classified the merchandise under that portion of paragraph 1022, Tariff Act of 1922, which provides for—

\* \* \* all other floor coverings not specially provided for, 40 per centum ad valorem.

The claim relied upon by appellants is that it should be classified under that provision of paragraph 1117 of said act, reading:

\* \* \* Ingrain carpets, and ingrain rugs or art squares, of whatever material composed, and carpets and rugs of like character or description, not specially provided for, 25 per centum ad valorem.

The provisions of both paragraphs are broad, that of paragraph 1022 being, in some respects, the more comprehensive.

The issue must be determined under the well settled doctrine of presumption of correctness of the collector's classification, and the equally familiar rule that the burden rests upon protestants to prove affirmatively, first, that the collector's classification was wrong and, second, that their own claim is right.

No effort was made to prove a commercial designation of the statutory terms different from their common meaning, and the controversy must be determined upon the common meaning.

The primary meaning of "ingrain," according to the dictionaries examined, as same relates to articles such as carpets, appears to have reference to the *dyeing* of the fabric before manufacture.

Webster defines "ingrain" when used as a verb:

1. To dye with or in grain, or kermes.
2. To dye in the grain, or before manufacture.

When used as an adjective, as it is used in paragraph 1117, *supra,* the definition given by Webster is:

2. *Dyeing.* Dyed before manufacture or in the fiber; as, *ingrain* colors.

The definitions by Funk & Wagnalls' are of the same purport.

Of the ingrain carpet, Webster's Dictionary says:

\* \* \* a kind of carpet made entirely of wool dyed in the grain, or before manufacture. Ingrain carpet is reversible, a similar design, but with the colors reversed, appearing on each side. It is called double, or two-ply, and triple, or three-ply, according to the number of webs in the fabric.

It is noted that this authority limits ingrain carpets to those made of wool. That is true of other authorities, such as Knight's Mechanical Dictionary and the Century Dictionary and Cyclopedia, but Funk & Wagnalls' Standard Dictionary, defining "ingrain" as a noun, says:

1. A two- or three-ply carpet made of worsted or cotton warp and wool, cotton, or other filling. 2. Ingrain yarn.

Paragraph 1117, *supra,* obviously contemplates that the carpet may be composed of other than wool, because it says "of whatever material composed." This phrase is broad enough to include cocoa fiber. Hence the determination of the issue must rest upon considerations other than the particular material of which the rugs are made.

To differentiate the articles at issue from ingrain carpets and rugs, the Government relies upon the testimony showing differences in the

weaving process and in the designs. These differences are epitomized in the Government's brief as follows:

\* \* \* (1) The design in the *Mourzouks* is the same color on both sides, whereas in the *Ingrains* the design on the reverse side is a different color. (2) In the *Mourzouks* the term "two-ply" refers to the *yarn* whereas in the *Ingrains* the term "two-ply" refers to the *weave*. (3) The design in the *Mourzouks* is made by the hand *"inlay" process*, whereas the design in the *Ingrains* is made by the hand *"Jacquard" process*. (4) The weave in the *Mourzouks* is a simple, primitive, *up and down weave*, whereas in the *Ingrains* the weave is distinctly characteristic of ingrained carpets and rugs only, and is *concededly different* from that found in the *Mourzouks*. (Italics quoted.)

On the other hand, appellants, while conceding the differences in weave and as to design, point out that paragraph 1117, *supra*, provides not only for ingrain carpets and rugs, but, in its second clause, provides for "carpets and rugs *of like character or description*" (italics ours), and insists that the evidence which was permitted to be introduced establishes certain similarities between actual ingrain carpets or rugs and the carpets or rugs involved which makes the latter clause applicable.

These similarities are very well summarized in appellants' brief as follows:

\* \* \* The evidence shows that the articles in question are, in character or description, like ingrain carpets or rugs in that they are (1) yarn-dyed, (2) without nap, (3) are woven on a loom, are (4) composed of warp and weft and a filling, (5) are used for the same purpose, and (6) are reversible in use, the same pattern appearing on both sides.

The opinion of the trial court is an elaborate one, the differences and similarities being fairly stated and discussed. After citing this court's decision in the case of *United States* v. *Marshall Field & Co.*, 18 C.C.P.A. (Customs) 403, T.D. 44642, wherein certain of the reasoning was thought to be applicable to the case at bar, the court says:

We think it is clearly evident that the decision of the higher court in the case cited, *supra*, was largely, if not altogether, influenced by the fact that the difference in the character and manner of construction between Wilton rugs and those claimed "of like character or description" was "so marked and obvious" as to outweigh all the other of minor similarities between the two. It seems to us the same comparison can be made in the present instance between ingrain rugs and those here claimed to be "of like character or description." In fact, the difference in the construction of ingrain rugs and of the cocoa-fiber rugs in question appears even greater. Furthermore, judging from the samples of the two classes of merchandise in evidence, they seem to be as different in appearance, make-up, and adaptability as two classes of floor coverings can possibly be. The points of similarity between the two, as brought out by the testimony and an inspection of the samples, are, in our opinion, not very decisive factors in the case, and as pointed out by counsel for the Government in his brief, are really common to many other kinds of carpets and rugs. On the other hand, the points of dissimilarity between the two rugs are so much more marked and distinct, especially in construction, that the cocoa-fiber rugs can hardly be said to be "of like character or description" to ingrain rugs.

Upon the whole, we feel that the trial court, for the reasons stated by it, has reached a conclusion as to the classification of the merchandise which, upon the record as made up, and in view of the issues as presented, should not be disturbed.

We have treated the contest as being solely between the paragraphs quoted and without considering the possible applicability of any other paragraph, since the contentions of the parties before us have not required this to be done.

Careful consideration has been given the assignments of error relating to the refusal by Judge Tilson, while presiding alone during the taking of testimony in the case, to permit appellants' counsel to state for the record certain matters which it was proposed to prove.

As we understand from a statement of counsel, appearing of record, during a colloquy between himself and Judge Tilson it was desired to attempt to show by a Government examiner of merchandise, who was called as a witness on behalf of the importer, that unless the particular merchandise here involved falls within the category of "carpets and rugs of like character or description" contained in paragraph 1117, *supra*, then there is no merchandise to which the clause may apply.

To that end, the witness was asked:

Q. Mr. Fleischmann, will you state whether in following out your work you have at any time returned for classification any carpets, rugs, or art squares under the provision in paragraph 1117 for carpets and rugs of like character or description not specially provided for?

Objection was made by Government counsel on the ground of irrelevancy, which objection was sustained.

Counsel for importer thereupon offered to state for the record what it was proposed to prove. This offer was refused, but with the statement that counsel might ask such questions as he desired and rulings would be made upon them. It was also stated by Judge Tilson during the course of the colloquy that the case might develop until he could see where "by this witness you might prove that."

An examination of this court's decision in the case of *Stiner & Son et al.* v. *United States*, 1 Ct. Cust. Appls. 545, T.D. 31550, discloses that the situation there presented was somewhat analogous to that in the case at bar. There, as here, an examiner of merchandise was being questioned. He was asked under what paragraph of the tariff act of 1909 he was passing certain merchandise for classification. Objection by Government counsel was sustained, and the Board of General Appraisers (now the United States Customs Court) denied the offer of counsel for the importer to state for the record what answer was expected.

The court said: "This latter ruling is not consistent with approved procedure", but held, "no prejudice resulted from the method of pro-

cedure adopted by the board, because the question is plainly irrelevant and no competent answer could be given to it."

In the later case of *Austin, Nichols & Co.* v. *United States*, 4 Ct. Cust. Appls. 313, T.D 33519, this court had occasion to discuss this rule of practice more fully, and the *Austin, Nichols & Co.* case was reversed and remanded for retrial, in part because of the refusal of the board to permit a statement of what it was proposed to prove. However, it was also found that the proof offered would, if admitted, have been competent, and the refusal to admit the testimony itself was held erroneous.

It is our opinion that, in the instant case, counsel should have been permitted to state what he expected to prove, but, upon the whole record, we do not feel justified in holding the refusal to be reversible error.

As was pointed out in the *Austin, Nichols & Co.* case, *supra*: "The rule which denies the right to make such a statement is usually based upon the fact that it might influence the jury and is applicable and enforced more particularly in jury trials." It was also there pointed out: "The rule differs in various States, but in Federal practice seems to be well settled."

As has been said, the action here complained of by appellants is not reversible error. Whether the precise question asked is relevant or not need not be determined, in view of the fact that, after the objection to it was sustained, counsel did not ask further questions of the witness along the line indicated, but forthwith made the offer to state what it was expected to prove.

It may be added that subsequently appellants did secure evidence from other witnesses, bearing upon the issue, to an extent which we think was sufficient to bring the full facts as to this merchandise clearly before the court.

The judgment of the United States Customs Court is *affirmed*.