UNITED STATES *v.* YARDLEY & Co., LTD. (No. 3090) [1]

[1] T. D. 43226

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell*, special attorney, of counsel), for the United States.

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellee.

[Oral argument December 6, 1928, by Mr. Lawrence and Mr. Place]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Soap reduced to a powdered form was imported at the port of New York and was classified as toilet soap under paragraph 82 of the Tariff Act of 1922. The importer protested, claiming the goods to be dutiable as soap powder or as all other soap under said paragraph 82. There was also an alternative claim as a not enumerated manufactured article under paragraph 1459 of said act. The customs court sustained the protest, finding the imported material to be "all other soap * * * not specially provided for." The Government has appealed.

Said paragraph 82 is as follows:

PAR. 82. Soap: Castile, 15 per centum ad valorem; toilet, 30 per centum ad valorem; all other soap and soap powder not specially provided for, 15 per centum ad valorem.

The testimony discloses that the product now before us is powdered soap. Martin H. Ittner, a domestic manufacturer, was called by the Government and testified that in manufacturing a similar powdered soap, soap is chipped and run over rolls "so that it comes out in the form of ribbons"; after these are dried, they are ground into powdered form, and this becomes the article of commerce. The court below held and the evidence plainly shows that there is a very marked distinction between powdered soap and soap powder. Soap powder, of which several samples were in evidence, is ordinarily manufactured by mixing soap which contains a large percentage, approximately 30 per centum, of water with carbonate of sodium and more water in a mixing machine; this product is then run off, dried and broken up into a powder. As so made, soap powder contains an excess of alkali. It is used in cleansing rough, badly soiled surfaces, in washing dishes and in some laundry work where the articles are badly soiled, and for other similar purposes where a high alkali content will not be harmful. This product is manufactured cheaply and on a large scale, while powdered soap is more costly and is produced in much less quantities.

There is some contest here as to the chief use of the imported product. While we find no direct evidence of its chief use, there is evidence of the chief use of powdered soap in this country.

The witness Ittner, referring to powdered soap introduced as illustrative Exhibit B, made the following answers to the quoted inquiries:

Powdered soap is used very largely in the manufacture of toilet articles, such as tooth powder, and in the preparation of other toilet articles; it is used some in washing of very fine fabrics, and it is an article that is ordinarily made free from excess alkali.

\*    \*    \*    \*    \*    \*    \*

Q. What is its chief use so far as you know?—A. Its chief use is in the manufacture of things like bath powders, and it could be manufactured into toilet soaps direct by adding a little water to it and putting it through the proper machinery.

\*    \*    \*    \*    \*    \*    \*

Q. It would not be recognized as a toilet soap in its present form?—A. It is sold sometimes for that purpose in dispensing machines that will dispense powdered soap; it is sold for that purpose.

Q. Would that be a more general use or an exceptional use?—A. Its use for that takes about as much as any other one use perhaps.

\*    \*    \*    \*    \*    \*    \*

Q. In the great majority of cases the chief use of such an article as the Exhibit B is as material for the manufacture of something else?—A. That is one of its chief uses. It is used also in laundries for washing high-grade articles in commercial laundering.

\*    \*    \*    \*    \*    \*    \*

The test to be applied to the classification of this merchandise is: What was it, in a tariff sense, when it was imported? *Moore* v. *United States*, 1 Ct. Cust. Appls. 115, T. D. 31117; *Quaintance* v. *United States*, 2 Ct. Cust. Appls. 215, T. D. 31950; *Aetna Explosives Co.* v. *United States*, 9 Ct. Cust. Appls. 298, T. D. 38238. Concededly, it was powdered soap. It is quite apparent, upon the record before us, if it was powdered soap, it was not soap powder. This being determined, but one inquiry remains: Was it toilet soap, as classified, or "all other soap," as claimed?

There is no evidence in the record of commercial designation of the term "toilet soap" which, in our opinion, is sufficient to base a judgment upon. We must, therefore, consider the term in its ordinary meaning.

Funk & Wagnalls Standard Dictionary, 1925, thus defines the compound noun "toilet-soap."

T.–soap, n.   Soap of good quality for use in the toilet; generally scented and in cakes.

Toilet soap, therefore, in its general acceptation, and in the meaning given to the term by the lexicographer quoted, is one used in connection with the toilet. Such use of the imported product, to constitute it a toilet soap, must ordinarily be a chief use, for the purposes just stated. It is obvious, from what we have hereinbefore stated, that the chief use of the imported product is not for toilet purposes,

but as a material for further manufacture. It is, therefore, not a toilet soap.

Herein lies the distinction between the case at bar and *United States* v. *Hillier's Son Co.*, 14 Ct. Cust. Appls. 216, T. D. 41706, relied upon by appellant here. In the case cited, scammony resin was involved. The question arose whether it was classifiable as a medicinal preparation or as a gum or resin. The evidence established that, as imported, the material was a medicinal preparation and was solely used as such. It was further shown that, while the scammony resin was ready for use as imported, it was only administered as a medicine in connection with an inert carrier. We there held that the scammony resin was properly dutiable as a medicinal preparation. The distinction is at once apparent. In the *Hillier* case, the material, when imported, was a medicinal preparation, solely used as such; in the case at bar, the material, when imported, is not a *toilet* soap, and is not chiefly used as such.

As the imported material was soap, and as we have found it was not specially provided for in said paragraph 82 as "toilet soap" or "soap powder," it was properly relegated to and classified under the provision for "all other soap" in said paragraph.

The judgment of the Customs Court is *affirmed*.