AMERICAN SHIPPING Co., C. F. WUNDERLICH & Co. *v.* UNITED STATES (No. 3466) [1]

United States Court of Customs and Patent Appeals, January 25, 1932

*Brown & Carter* (*Allan R. Brown* of counsel) for appellants.

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler* and *Philip Stein.* special attorneys, of counsel), for the United States.

[1] T. D. 45470

[Oral argument December 8, 1931, by Mr. Brown and Mr. Stein]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The merchandise involved in this suit consists of products, one class being liquid in form and the other class in the form of a powder, used as a shampoo. The liquid product appears to have been invoiced as "fluid soap" and the powder product as "soap powder."

The collector of customs at the port of New York, which was the port of entry, classified the merchandise as a nonalcoholic toilet preparation and imposed a duty of 75 per centum ad valorem under paragraph 62 of the Tariff Act of 1922, which reads as follows:

PAR. 62. Perfumery, including cologne and other toilet waters, articles of perfumery, whether in sachets or otherwise, and all preparations used as applications to the hair, mouth, teeth, or skin, such as cosmetics, dentifrices, tooth soaps, pastes, theatrical grease paints, pomades, powders, and other toilet preparations, all the foregoing, if containing alcohol, 40 cents per pound and 75 per centum ad valorem; if not containing alcohol, 75 per centum ad valorem.

Appellants protested, claiming the merchandise to be properly classifiable and subject to duty at 30 per centum ad valorem under paragraph 82 of said act, which reads:

PAR. 82. Soap: Castile, 15 per centum ad valorem; toilet, 30 per centum ad valorem; all other soap and soap powder not specially provided for, 15 per centum ad valorem.

There were alternative claims, but only that under said paragraph 82 is contended for. The Customs Court overruled the protests, and from its judgment the instant appeal was taken.

The liquid product appears to be labeled as "Teer" (meaning "tar") hairwash and the powdered preparation as "Schaumpon."

By agreement of counsel for the respective parties both products were referred to the analyst or chemist in the appraiser's stores laboratory, and an analysis made of them. The report of the chemist is as follows:

The "Teer" hairwash has the following composition:

| | Per cent | | Per cent |
|---|---|---|---|
| Water | 54. 5 | Unsaponifiable matter | . 5 |
| Anhydrous soap | 30. 5 | Free acid as oleic | . 3 |
| Glycerine | 10. 9 | Salt, perfume and undetermined | 3. 3 |

There is no evidence of tar or other substances not usually found in liquid soap.

The sample marked "Schaumpon" has the following composition:

Loss at 105°, 2.22%.

Alcohol insoluble, 53.52%, consisting of sodium carbonate and borax.

Salt, 0.35%.

Anhydrous soap and a little excess alkali, 43.91% by difference.

Water insoluble _____ None.

No evidence of camomile extract was found.
The sample is slightly perfumed.

There is no dispute about the facts as to the use of the products. Both are used exclusively upon the hair and scalp. Appellants contend that the preparations are simply for washing and cleansing the hair and scalp. The Government's contention, based, apparently, largely upon the "directions for use" on the containers, is that the merchandise is at least represented as having something more than a mere cleansing character. Its brief asserts that some of the ingredients are "beneficial to the hair, in massaging and treating the scalp," and quotes from one of the labels:

Dandruff free, full shining hair. No more fatty hair; particularly clean the scalp, preventing the hair falling out, and naturally cultivating the hair.

The Customs Court said:

Not only does the record fail to show that the merchandise represented by either one of the exhibits is used as toilet soaps are ordinarily used, or as even common laundry soaps are ordinarily used, but, on the contrary, from their compositions, the directions on the containers, and the testimony of the witness, they are shown to be specially prepared and used for treatment of the hair, and are therefore properly dutiable at the rate of 75 per centum ad valorem as nonalcoholic toilet preparations used as applications to the hair as provided in paragraph 62, *supra.*

The Government further insists that the legislative history of the subject matter of paragraph 62 indicates that it was the clear intent of Congress in the enactment of the Tariff Act of 1922 that merchandise such as that involved should be classified under said paragraph 62.

An examination of this history discloses that paragraph 48 of the Tariff Act of 1913 was substantially the same as paragraph 62 of the 1922 act, *supra.* In the Tariff Information Surveys, used in the preparation of said 1913 act, it was stated:

GENERAL INFORMATION

*Description and uses*

\* \* \* 2. Hygienic toilet preparations, which include the articles purporting to have a favorable effect on the health. Such hygienic preparations comprise most of those used as applications to the hair, mouth, teeth, and skin. The principal preparations for the care of the hair are oils, pomades, tonics, and *washes;* \* \* \*. (Italics ours.)

The Summary of Tariff Information, 1920, prepared for the use of the Ways and Means Committee of the House of Representatives in formulating the measure which became the Tariff Act of 1922, contains the statement that—

Perfumes and cosmetics include \* \* \* preparations \* \* \* for the care of the hair, such as oils, *washes,* tonics and pomades; \* \* \*. (Italics ours.)

The Summary of Tariff Information, 1921, prepared by the Tariff Commission for use of the United States Senate in its consideration of said Tariff Act of 1922, reiterated the statements of the 1920 summary last above quoted.

The contentions of the importers are, in substance, that the merchandise is soap in fact, as shown by the labels, by the testimony as to use, and by the component elements disclosed by the analysis of the chemist, it being formed by a union of a fatty acid with a base; that the fact that it is used for a special toilet purpose and not for general toilet purposes does not take it out of the classification of toilet soaps, and that "the *eo nomine* provision for toilet soap in paragraph 82 is more specific than the provision in paragraph 62 and controls the classification of all toilet soap not specifically named."

The Government's brief under "Point IV" says:

Assuming, but not admitting, that the merchandise involved herein may be regarded both as a "preparation for the hair" and as a "soap," it would be dutiable under paragraph 62, at the higher rate of duty, by virtue of its exclusive use and the provisions of paragraph 1460, Tariff Act of 1922.

The pertinent part of paragraph 1460, reads as follows:

PAR. 1460. * * * If two or more rates of duty shall be applicable to any imported article, it shall pay duty at the highest of such rates.

There is cited the case of *Factor* v. *United States*, 15 Ct. Cust. Appls. 401, T. D. 42570, where this court held that certain "pencils, being a shell of wood containing an unctuous material used by actors in their make-up," were classifiable as a cosmetic or theatrical grease paint under paragraph 62 of the Tariff Act of 1922, by reason of use, rather than under paragraph 1451 of said act which makes an *eo nomine* provision for "pencils of * * * wood * * * filled with lead or other material."

We there said:

We are not unmindful of the *eo nomine* rule, to which our attention has been called. It has been many times held, however, that the *eo nomine* rule can not prevail as against the doctrine of chief use, where it is made the test of classification. *United States* v. *Hillier's Son Co.*, 14 Ct. Cust. Appls. 216, T. D. 41706, and cases cited.

Whether the Congress intended that articles of this character and description should be covered by the provisions for "pencils" in paragraph 1451 need not here be determined, because, if it were so held, it would, nevertheless, be necessary for us to hold them more specifically provided for under paragraph 62 on account of the doctrine of chief use, which is made the test of their classification by the language of the paragraph.

The Government here insists that, in view of the language, "all preparations *used* as applications to the hair," appearing in paragraph 62, the doctrine of chief use becomes the test of classification in the instant case. (Italics ours.)

It was apparently upon this theory that the Customs Court over-ruled the protest.

In *United States* v. *Conover et al.*, 17 C. C. P. A. (Customs) 462, T. D. 43917, this court held that a certain species of "soap *chiefly used* for washing the hands when they are soiled with ink, grease, or other similar substances, was properly classified by the collector as toilet soap under paragraph 82, Tariff Act of 1922." (Italics ours.)

Reference was made by us in the foregoing case to *United States* v. *Yardley (Ltd.)*, 16 Ct. Cust. Appls. 499, T. D. 43226, wherein, after quoting Funk & Wagnalls' Standard Dictionary definition of "toilet soap" (viz, "soap of good quality for use in the toilet; generally scented and in cakes"), we said:

Toilet soap, therefore, in its general acceptation, and in the meaning given to the term by the lexicographer quoted, is one used in connection with the toilet. Such use of the imported product, to constitute it a toilet soap, must ordinarily be a chief use, for the purposes just stated.

In the *Yardley* case, *supra*, a certain species of soap powder was held not to be toilet soap.

In both the foregoing cases chief use was made determinative of the question of classification, that is, the chief use to which the article was put determined whether it was or was not a toilet soap.

Webster's New International Dictionary, 1925, defines "toilet" as—

Act or process of dressing, esp., formerly, of dressing the hair; also, that which is arranged in dressing; attire; dress; "get-up"; also, a particular costume; as, he made a careful *toilet;* an exhibition of *toilets.* (Italics quoted.)

It was said by us in the *Conover* case, *supra*, that "it could hardly be contended that the act of washing and cleansing the hands was not a part of the making of the toilet," and we held that the particular soap there involved was a toilet soap although used only, or at least chiefly, for washing hands that had been stained with ink or that were greasy or tarred.

Just so in the instant case it might be said that the act of washing and cleansing the hair is a part of making the toilet, and that, there-fore, the merchandise involved is used in making the toilet and hence is toilet soap, but the issue here is not the same as the issues in the *Yardley* and *Conover* cases, *supra*. There the question was whether the soap involved was "toilet soap" or "other soap and soap powder not specially provided for," both of which appear in paragraph 82 of the Tariff Act of 1922. Here the question is whether the mer-chandise is more specifically provided for as "toilet soap" in said paragraph 82, or as "preparations used as applications for the hair" provided for in paragraph 62.

Attention has been heretofore directed to the legislative history of paragraph 62 and to the fact that there was before the Congress, in the formulation of both the tariff acts of 1913 and 1922, in the official

documents compiled for use in such formulation, the statement that preparations for the care of the hair included *washes*, along with oils, pomades, and tonics.

Funk & Wagnalls' Standard Dictionary gives as one of the noun definitions of the word "wash"—

A liquid for the toilet, as for the hair, complexion, etc.

Webster's Dictionary gives—

A liquid cosmetic, dentifrice, medical lotion, or the like.

Under these definitions and tested by the rule of chief use, as shown by the record, the merchandise at issue is undoubtedly a preparation to be applied to the hair, and in the light of the legislative history recited it seems to us that it was the intent of Congress that it should be classified under paragraph 62 as being more specific than paragraph 82.

Accordingly, we think there was no error in the judgment of the Customs Court and the same is *affirmed.*