(C.D. 2295)

Norman G. Jensen, Inc. v. United States

United States Customs Court, First Division

(Decided November 15, 1961)

*Oppenheimer, Hodgson, Brown, Baer & Wolff* (*William C. Canby, Jr.,* of counsel) for the plaintiff.

*William H. Orrick, Jr.,* Assistant Attorney General (*Sheila N. Ziff,* trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: These four protests, all of which have been consolidated, involve certain bottles that were assessed with duty at the rate of 12½ per centum ad valorem under the provision in paragraph 218(e) of the Tariff Act of 1930, as modified by T.D. 52739, reading, so far as pertinent, as follows:

Bottles and jars, wholly or in chief value of glass, whether or not fitted with or designed for use with ground-glass stoppers, of the character used or designed to be used as containers of perfume, talcum powder, toilet water, or other toilet preparations:

Produced by automatic machine from molten glass not automatically fed to the machine. . . .

Plaintiff claims that the bottles in question are properly dutiable at 21 cents per gross under the provision in paragraph 217 of the Tariff Act of 1930, as modified by T.D. 54108, for:

Bottles, jars, and covered or uncovered demijohns, and carboys, any of the foregoing, wholly or in chief value of glass, not specially provided for, if unfilled and holding less than ¼ pint.

For a description of the bottles in controversy, we draw from plaintiff's brief wherein the sample in evidence (plaintiff's exhibit 1) is accurately and concisely described as follows:

* * * Machine-made semi-flat glass bottle of 3½ fluid ounce capacity with serrations on one side, with a smooth portion of the same side representing an oversized raindrop, and with the words "White Rain" molded into the bottom of the same side. The bottle is not etched or intricately designed.

The case has been submitted for decision on an agreed set of facts, wherein the parties have agreed as follows:

That the bottles involved in these cases are wholly or in chief value of glass.

That the said glass bottles are of the character used, and are designed to be used, as containers of shampoo.

That the same glass bottles are designed for use with plastic, screw-type caps.

That the said glass bottles were produced entirely by automatic machine.

In the course of argument to support its position, plaintiff discusses paragraph 218(e) of the Tariff Act of 1930, as originally enacted, which reads as follows:

Bottles and jars, wholly or in chief value of glass, of the character used or designed to be used as containers of perfume, talcum powder, toilet water, or other toilet preparations; bottles, vials, and jars, wholly or in chief value of glass, fitted with or designed for use with ground-glass stoppers, when suitable for use and of the character ordinarily employed for the holding or transportation of merchandise; all the foregoing produced by automatic machine, 25 per centum ad valorem; otherwise produced, 75 per centum ad valorem. For the purposes of this subparagraph no regard shall be had to the method of manufacture of the stoppers or covers.

In connection with the foregoing paragraph, counsel for plaintiff refer to certain phases of legislative history relating thereto and state that the bottles covered thereby "applied to the traditionally hand-blown glass bottles; that is, bottles of an intricate and highly stylized design."

The contention is without merit. The legislative history of paragraph 218(e), *supra*, was thoroughly discussed in a line of cases relating to certain perfume, atomizer, and toilet water bottles. *Jos. Riedel Glass Works, Inc.* v. *United States*, 12 Cust. Ct. 173, C.D. 849, affirmed in *United States* v. *Jos. Riedel Glass Works, Inc.*, 32 C. C.P.A. (Customs) 201, C.A.D. 307; *Griffon Importing Co.* v. *United States*, 36 C.C.P.A. (Customs) 121, C.A.D. 408. In the cited cases, the issue concerned the method of manufacture of the bottles, i.e., whether they were "produced by automatic machine," or "otherwise produced." In the *Griffon Importing Co.* case, the appellate court described the merchandise there under consideration as follows:

> The bottles submitted at the trial of the instant case represent no such quality of merchandise as that produced by the American glass blower, but *are of the cheaper variety produced by automatic or semiautomatic machine*. No highly skilled glass blower was employed in the production of the bottles, and only ordinary labor, outside of the gatherer who fed the gob from the forehearth, as in the *Riedel* case, was employed in the production of the imported merchandise. * * * [Italics supplied.]

In the *Riedel* and *Griffon* cases, *supra*, the court held that the intent of Congress, as reflected by the legislative history of paragraph 218(e), was to protect American glass blowers against the competition of lower paid glass blowers of other nations by providing a higher rate of duty on bottles produced other than by automatic machine. Nowhere is there any indication that the provisions of paragraph 218(e), either as originally enacted or as modified, are limited to bottles that "are often works of art in themselves, imparting substantial additional value to the contents," as contended in plaintiff's brief.

Under the agreed set of facts herein, showing that the articles in question are glass bottles, made by automatic machine, and that they are "of the character used, and are designed to be used," as containers of shampoo, there is virtual concession by the parties hereto that the bottles under consideration are within the kind provided for in paragraph 218(e), as modified, *supra*, the sole issue being whether the shampoo, "White Rain," is a product of the class or kind covered by the provision for "other toilet preparations" in paragraph 218(e), as modified. If so, the collector's classification must stand; otherwise, plaintiff's claim will be sustained.

No contention is made along the line of commercial designation. In fact, the record herein will not permit application of the principle. The common meaning of words in controversy is pertinent.

In *United States* v. *P.B.T. Williams*, 21 C.C.P.A. (Customs) 243, T.D. 46776, certain so-called "neck dusters," used by barbers principally for brushing hairs from the necks of customers, were held to be classifiable as toilet brushes. In reaching its conclusion, the appellate court quoted the first definition of the word, "toilet," given in Funk & Wagnalls New Standard Dictionary as "The process of dressing oneself, formally especially of dressing one's hair," and then stated as follow:

The clear implication of the quoted definition is that at one time when the word "toilet" was used, it was directly or especially connected with hairdressing, and that it has since, in the common understanding, become broader in meaning, including other operations in the process of dressing oneself. To express it differently, at one time emphasis was upon hairdressing, but in later usage the emphasis does not necessarily lie upon this one operation. However, there is nothing in the dictionary definitions tending to indicate that hairdressing is not still a toilet process.

The cited case was adhered to in a retrial of the issue, involving the same merchandise, in *P. B. T. Williams* v. *United States*, 23 C.C.P.A. (Customs) 328, T.D. 48194.

The same connotation of the word "toilet" was applied by our appellate court in *United States* v. *W. L. Conover and F. Rochow & Co.*, 17 C.C.P.A. (Customs) 462, T.D. 43917; *United States* v. *Yardley & Co., Ltd.*, 16 Ct. Cust. Appls. 499, T.D. 43226; and *United States* v. *International Forwarding Co., Inc.*, 18 C.C.P.A. (Customs) 27, T.D. 44001. The said cases involved substances used for washing and cleaning the hands when they are soiled from ink, grease, or other substances. In each case, the court held the commodity properly classifiable as toilet soap. All of the cases followed the common meaning of the word "toilet" in reaching their conclusions. In the *Conover* case, the court quoted a dictionary definition and then stated as follows:

It could hardly be contended that the act of washing and cleansing the hands was not a part of the making of the toilet. What means shall be utilized in doing this is just a matter of degree. There is a considerable difference between the grimy hands of the boy as he comes from play and the dainty fingers of the lady of fashion. What will cleanse one will have no effect on the other. The cleansing of them, however, in both cases, is a toilet operation. The fact that the engineer or garage mechanic must use this, or a like soap, to cleanse his hands or arms, does not make it any the less a part of his toilet. * * *

Consistent with the cited decisions, as they applied the term "toilet" in its association with tariff provisions, we direct our consideration to the present issue as it concerns the shampoo, "White Rain," for which the bottles in question are designed to be containers.

The word "shampoo" is defined in Webster's New International Dictionary as follows:

shampoo, *n.* * * * 2. A mixture or preparation to be used in shampooing; as a liquid *shampoo.*

shampoo, *v.* * * * 2. To cleanse and treat (the hair and scalp), usually with soap and water, though often also with some specially prepared cleansing and tonic agents; * * *.

Counsel for plaintiff argue to the effect that "White Rain" is a pure cleansing shampoo, that it does not tint or perfume the hair, and that, therefore, it is something other than a toilet preparation. The contention is answered, adversely to plaintiff's position, in *American Shipping Co. et al.* v. *United States*, 19 C.C.P.A. (Customs) 304, T.D. 45470, which involved two shampoo products, one being in liquid form and the other in the form of a powder, and wherein the court made the following pertinent comment:

> It was said by us in the *Conover* case, *supra*, that "it could hardly be contended that the act of washing and cleansing the hands was not a part of the making of the toilet," and we held that the particular soap there involved was a toilet soap although used only, or at least chiefly, for washing hands that had been stained with ink or that were greasy or tarred.

> Just so in the instant case it might be said that the act of washing and cleansing the hair is a part of making the toilet, and that, therefore, the merchandise involved is used in making the toilet and hence is toilet soap, but the issue here is not the same as the issues in the *Yardley* and *Conover* cases, *supra*. * * * Here the question is whether the merchandise is more specifically provided for as "toilet soap" in said paragraph 82, or as "preparations used as applications for the hair" provided for in paragraph 62.

That the appellate court, in the *American Shipping Co.* case, *supra*, held that shampoo was more specifically provided for under the statutory provision for "preparations used as applications for the hair," has no significance in this case. In the cited case, the issue related entirely to the tariff classification of shampoo. In this case, our primary consideration concerns the classification of machine-made, glass bottles "of the character used or designed to be used" as containers of toilet preparations. The important phase of the *American Shipping Co.* case to the present case is the court's recognition therein "that the act of washing and cleansing the hair is a part of making the toilet." It follows from all of the cited decisions and authoritative references, hereinabove referred to, that the liquid shampoo, "White Rain," for which the bottles in question are containers, is a toilet preparation. The conclusion leads to a consideration of plaintiff's contention that, under the principle of *ejusdem generis*, shampoo is not within the purview of the provision for "other toilet preparations" in paragraph 218(e). In this connection, counsel, in their brief, state as follows:

> Furthermore, shampoo is a much more common product than any of the toilet preparations specifically mentioned in Par. 218(e). It cannot be viewed as likely that Congress would name perfume, talcum powder and toilet water, which are commonly known as specialty items used in limited quantity, and would leave a large-volume item such as shampoo to the operation of a catch-

all clause. By the rule of *ejusdem generis* no such expansion should be construed into the paragraph.

It should be noted that the statements embodied in the foregoing quotation are not only not supported by any evidence herein, but, also, no authorities have been cited on which to base the conclusions expressed.

The rule of *ejusdem generis* is stated in Crawford's "The Construction of Statutes" as follows:

§ 191. **Ejusdem Generis.**—Where general words follow the designation of particular things, or classes of persons or subjects, the general words will usually be construed to include only those persons or things of the same class or general nature as those specifically enumerated. * * * But under no circumstances, and regardless of the type of statute involved, must the rule be used where the language of the statute under consideration is plain and there is no uncertainty. Its use is permissible only as an aid to the court in its attempt to ascertain the intent of the lawmakers. Nor will it be proper for the court to follow the rule where to do so will defeat or impair the plain purpose of the legislature. It cannot be employed to restrict the operation of an act within narrower limits than was intended by the lawmakers. * * *

The particular toilet preparations, or specific enumerations, in paragraph 218(e), as modified, are perfume, talcum powder, and toilet water. Funk & Wagnalls New Standard Dictionary contains the following definitions:

**perfume,** *n.* * * * 2. A fragrant substance or mixture prepared to emit a pleasant odor.

**toilet powder,** *n.* A flour-like antiseptic powder sprinkled over the body, as after a bath, to soothe the skin, to allay irritation, or to absorb perspiration.

**toilet water,** *n.* A highly perfumed liquid used in the toilet, as in or after a bath, or on the face after shaving.

There is nothing about the specifically enumerated articles, as above defined, to say that they belong to a single general class, except, as they appear in the tariff provision involved herein, they are all toilet preparations. The principle of *ejusdem generis* is not applicable. *Corporacion Argentina de Productores de Carnes* v. *United States*, 32 C.C.P.A. (Customs) 175, C.A.D. 304. Accordingly, we hold that the shampoo, "White Rain," is a toilet preparation within the purview of paragraph 218(e), as modified. Since it is agreed that the bottles in question are "of the character used, and are designed to be used, as containers" of this liquid shampoo, they are, therefore, properly classifiable under said modified paragraph 218(e), as assessed by the collector, and we so hold.

Consideration has been given to all of the cases cited in the briefs filed by counsel for the respective parties. Reference herein has been made to those cases considered necessary to support the reasoning followed and the conclusion reached.

On the basis of the present record and for all of the reasons herein-above set forth, the protests are overruled and judgment will be rendered accordingly.