UNITED STATES *v.* HILLIER'S SON CO. (No. 2728)[1]

SCAMMONY RESIN—MEDICINAL PREPARATION—RESINS—CRUDE—RELATIVE
    SPECIFICITY—USE.

Scammony resin, obtained by percolating scammony root with alcohol and then precipitating the resin with water, was assessed as a medicinal preparation, under paragraph 5, Tariff Act of 1922, and claimed to be free of duty as a resin, under paragraph 1584. It is used exclusively as a medicine, and is administered in combination with inert fillers, excipients, and flavorings, though it is sometimes used in combination with other cathartics. It is not crude, since it has been prepared from the crude drug, and is obviously a preparation. Although it is a resin, the provision for medicinal preparations is more specific, since it is a classification by use. Upon the authority of *McKesson & Robbins v. United States,* 3 Ct. Cust. Appls. 515, T. D. 33167, it is a medicinal preparation.

---

[1] T. D. 41706.

United States Court of Customs Appeals, May 29, 1926

Appeal from Board of United States General Appraisers, G. A. 9063, T. D. 41229

[Reversed.]

*Charles D. Lawrence*, Assistant Attorney General (*Jerome G. Clifford*, special attorney, of counsel), for the United States.
*Allan R. Brown* for appellee.

[Oral argument May 13, 1926, by Mr. Clifford and Mr. Brown]

Before Graham, Presiding Judge, and Smith, Barber, Bland, and Hatfield, Associate Judges

Hatfield, Judge, delivered the opinion of the court:

The merchandise involved in this appeal is scammony resin. It was assessed for duty by the collector under paragraph 5 of the Tariff Act of 1922, which reads as follows:

Par. 5. All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

It was claimed in the protest and held by the Board of General Appraisers to be free of duty under the provision for "resins, not specially provided for," contained in paragraph 1584 of the Tariff Act of 1922, which reads as follows:

Par. 1584. Gums and resins: Damar, kauri, copal, dragon's blood, kadaya, sandarac, tragacanth, tragasol, and other gums, gum resins, and resins, not specially provided for.

It is conceded that, if the merchandise is dutiable under paragraph 5, it must come within the provision contained therein for "all medicinal preparations, * * * not specially provided for."

From the record in the case it appears that scammony resin is obtained from shredded scammony root by percolating it with alcohol. The resin is then precipitated by means of water. It is in small pieces, and was imported in tins containing approximately 100 pounds each. There was only one witness called by the importer. He testified that the merchandise is used as a cathartic, and as a remedy for "external skin disease," when mixed with other things and that it is never used in its imported condition for such purposes.

One witness testified for the Government. He stated that he was in the Government service as a pharmacognosist in the Bureau of Chemistry; that he was familiar with the processes used in producing scammony resin, and the uses to which such resin is put; that it is used as a cathartic or purgative. With reference to its preparation for such use, he said:

\*     \*     \*     \*     \*     \*     \*

Q. Is it used alone or is it mixed with something else?—A. It is mixed with other things, mostly fillers.

Q. Do you know what the other things are?—A. In the event it is made in the form of a pill to be administered, it is usually mixed with starch and glucose, the glucose acting as an excipient.

Q. As what?—A. Excipient, to make it bind; or it may be administered in connection with other correctives and prepared in the form of a tablet.

Q. Well, are these other things that are put with it used merely to take the taste away, or are they to make a chemical combination or some other purpose?—A. They may be used either way.

Q. Well, do you know, in those pills or tablets which you speak of, what the use of the scammony resin is in it?—A. The use of scammony resin, wherever it is prescribed, is for its cathartic value.

Q. That is, the pills are given for their cathartic value?—A. Yes.

Q. And is the cathartic value, is that from the scammony resin?—A. Yes, that is the active principle.

The trial court found from the evidence that the merchandise is not used as a medicine in its imported condition; but that it is "used in the making up and manufacture of medicines and without the addition of other things is not ready for administering as a medicine."

The Government contends that the merchandise is a medicinal preparation in its imported condition; that, while it is necessary to mix it with other materials before it can be administered as a medicine, such materials do not change the character of the resin, and are used only for the purpose of providing an inert "carrier" or "vehicle" for introducing the resin into the stomach; that the provision for medicinal preparations contained in paragraph 5 more aptly describes the merchandise than the provision for resins contained in paragraph 1584.

The appellee contends that the resin in its imported condition is not a medicinal preparation; that, if it should be held to be a medicinal preparation, it is, nevertheless, more specifically provided for under the provision for "resins" contained in paragraph 1584.

In *McKesson & Robbins* v. *United States*, 3 Ct. Cust. Appls. 515, T. D. 33167, decided February 1, 1913, menthol was held a medicinal preparation. It was shown to be produced by freezing the oil collected from a distillate of the peppermint plant, and to be used only as a medicine—sometimes alone, but usually in combination with an inert carrier. We quote from the opinion:

Does the fact that in its customary use it is to be put in form for such use by the use of a carrier or that it is to be dissolved, so long as it requires no chemical change and no compounding with other medical ingredients to make it useful as a medicine, result in taking it out of the category of medicinal preparations? We think not.

Counsel for the Government argues that the merchandise in question comes squarely within the decision in the above case. In order to determine that question we must turn to the evidence in this case. The witness for the importer testified that, in order to use scammony resin for medicinal purposes, it was necessary to mix it with other

"materials." He frankly admitted that, not being a "pharmacist," he did not know what such "materials" were.

The witness for the Government, who was apparently qualified to testify in that regard, said that, when the resin is prepared to be administered as medicine in the form of a pill, it is usually mixed with starch and glucose, the glucose acting as an excipient; and that the resin might be administered in the form of a tablet with other correctives; that the use of the resin, in whatever manner prescribed, is for its cathartic value. He stated that, in addition to these uses, the resin could be used with other agencies to make a chemical combination.

It seems clear from the evidence that the resin in question is used exclusively as a medicine; that it is not administered in its imported condition; that it may be and is used for medicinal purposes when combined with inert carriers; that no chemical change is required, nor is it necessary to compound it with other medicinal properties in order to make it useful as a medicine. It would seem, therefore, that, in view of the decision of this court in the *McKesson* case, *supra*, it has been established that the merchandise is a medicinal preparation.

Counsel for the appellee contends that it was held in the case of *United States* v. *Martin*, 155 Fed. 264, that scammony resin was not a medicinal preparation, but a drug advanced in value. The court did so hold. The record in that case was evidently quite different from the record in the case at bar. The opinion of Somerville, G. A., was approved by the Circuit Court without comment. In the opinion of the board, Judge Somerville said:

One of the witnesses, a druggist of experience, testified that, before it can be used at all, it has to be dried in a kiln and then powdered; that, *before it is fit to be used medicinally, it must be compounded with other drugs;* and that it is principally employed in the production of calisaya compounds. (Italics ours.)

There is no such evidence in this case. The cases are clearly distinguishable.

The case of *United States* v. *Merck et al.*, 66 Fed. 251, cited by counsel for the appellee, was noted and distinguished from the *McKesson* case, *supra*, by Montgomery, Presiding Judge, in the opinion in that case. It was there said:

The case of the United States *v.* Merck et al. (66 Fed., 251), dealing with elaterium, is not controlling. The substance in that case was imported in *little cakes* and varied much in quality. It was not used in this form by the physician. *The manufacturer extracted from the cakes their vital principle, which was known as "elaterine."* It was held that the imported article was not a medicinal preparation, but an article from which a medicinal preparation could be made. (Italics ours.)

It is urged by counsel for the appellee that the case of *A. Klipstein & Co.* v. *United States*, 167 Fed. 535, decided by the Circuit Court

of Appeals, Second Circuit, January 12, 1909, is controlling of the issues in this case. It was there held by the court that glycerophosphate of lime, which was "occasionally dispensed medicinally in its imported form," but which was "almost always used in combination with other drugs in the preparation of elixirs," was not itself a medical preparation. The decision in that case was based upon the decisions in the cases of *Hirzel* v. *United States*, 58 Fed. 772, 7 C. C. A. 491, and *United States* v. *Martin, supra*. We have heretofore considered and distinguished the *Martin* case from the case at issue. In the case of *Hirzel* v. *United States* the court held that crude cocaine which was used in a very small degree for medicinal purposes, not in filling prescriptions but chiefly "in the manufacture of cocaine wines, which are generally proprietary preparations, and of oleates," was not dutiable as a medicinal preparation. In this connection, the court said:

It is also used for medical purposes when refined. Its common use in its impure condition is for the manufacture of the pure or advanced forms in which cocaine becomes known as a medical article, and which may properly be called medicinal preparations. Its occasional use, for the sake of economy, upon the surface of the skin for surgical purposes or for dental purposes, does not constitute it a medicinal preparation.

We do not have access to the record in the *Klipstein* case, but from the language of the opinion, we think the case is distinguishable from the *McKesson* case. If it is not, it is sufficient to say that the decision in the *McKesson* case, will be followed by this court.

Counsel for the appellee has called our attention to the fact that the menthol crystals involved in the *McKesson* case were sometimes used for medicinal purposes in their imported condition, and that it appeared in that case that for a period of 12 years prior thereto, the menthol had been classified as a medicinal preparation. Those two facts appeared in that case, and were mentioned in the opinion, but the decision was not based upon either or both of those propositions. It plainly rested upon the proposition, which was fully discussed in the opinion, that the merchandise was in fact a medicinal preparation, and that the necessity of mixing inert carriers therewith in order to make it available for use as a medicinal preparation did not "result in taking it out of the category of medicinal preparations."

It is argued that the importation is a crude resin and can not be considered as a preparation.

The witness, L. J. Schwarz, testified that a crude resin was one that "exudated naturally from the root." He testified further as follows:

\*        \*        \*        \*        \*        \*        \*

Q. Is there any difference between that which exudates from the root and that which is prepared with the aid of alcohol?—A. Yes, sir.

UNITED STATES v. HILLIER'S SON CO.

Q. What is that difference?—A. The difference is this: The natural product carries with it a certain amount of gum, and because of it it can be triturated to form an emulsion. The prepared extract of resin does not form an emulsion.

Q. Because it doesn't include the article that you described as gum, is that it?—A. Yes.

\* \* \* \* \* \* \*

Q. Is the difference between that which is the natural exudation and that which is the result of treatment with alcohol the difference that you would find between resins and gum resins?—A. I would say so.

\* \* \* \* \* \* \*

It would seem, therefore, that the scammony resin was prepared for use for medicinal purposes by extracting it from the scammony root, which, according to the record, is a crude drug and securing it free from gum and other impurities. If it is a medicine and otherwise comes within the term medicinal preparation, it would seem strange indeed if it should be held not to be a medicinal preparation solely because its preparation for use as a medicine consisted only in extracting it from a crude drug and separating it from its impurities. *Lehn & Fink* v. *United States,* 4 Ct. Cust. Appls. 325. The fact that by processing a crude drug by shredding and percolating it with alcohol, then precipitating the pure resin by means of water, does not produce an artificial preparation is not of great importance in determining its tariff status, because the statute provides that a medicinal preparation may be obtained naturally or artificially Nor does the fact that the resin is not in powdered form prevent its classification as a medicinal preparation.

It is true that such preparation does not make it any less a resin, but it is, nevertheless, a medicinal preparation; that is, it has been prepared for use as a medicine.

We are of opinion that the merchandise upon the record of this case comes squarely within the decision in the *McKesson* case; and that it is a medicinal preparation and dutiable as such, unless the provision for "resins" contained in paragraph 1584 is a more specific designation.

It has many times been held by this court that an *eo nomine* provision in tariff statutes must prevail over words of general description, unless, in a particular case, the Congress has indicated a contrary intention. *Cohn & Rosenberger* v. *United States,* 4 Ct. Cust. Appls. 378, T. D. 33536; *United States* v. *Massce & Co.,* 6 Ct. Cust. Appls. 395, T. D. 35972; *Roger & Gallet et al.* v. *United States,* 7 Ct. Cust. Appls. 89, T. D. 36424; *United States* v. *Ducommun Hardware Co.,* 7 Ct. Cust. Appls. 353, T. D. 36904. There are many other cases which hold to the same effect. The provision for "medicinal preparations" contained in paragraph 5 is followed by the qualification "not specially provided for." The provision for "resins" in paragraph 1584 is similarly qualified. The provision for "resins" manifestly includes all resins, although it will be observed that scammony

resin is not named therein, regardless of the use for which they are prepared, or to which they may be put.

The same can not be said of the provision for "medicinal preparations." Obviously, the test of use must be applied to a preparation in order to determine whether it is to be classified as a medicinal preparation, although the word "use" does not appear in paragraph 5. . *United States* v. *Los Angeles Trading Co.*, 13 Ct. Cust. Appls. 330, T. D. 41236.

A preparation which might have some therapeutic value, if administered in a proper case, but which was not used for medical purposes, could hardly be said to be a medicinal preparation for tariff purposes.

The provision for "all medicinal preparations" is equivalent to an enumeration of every medicinal preparation not otherwise specially provided for by name. *Merck & Co.* v. *United States*, 6 Ct. Cust. Appls. 41, 42, 43, T. D. 35315.

The resin involved here is used for no other than medicinal purposes. It is a medicinal preparation. And while it is provided for as a "resin" in paragraph 1584, it is more specifically provided for, we think, as a medicinal preparation in paragraph 5. *Vandiver* v. *United States*, 1 Ct. Cust. Appls. 194, T. D. 31219; *United States* v. *Hempstead & Son*, 3 Ct. Cust. Appls. 436, T. D. 33004; *United States* v. *Boker & Co.*, 6 Ct. Cust. Appls. 243, T. D. 35472; *United States* v. *Ducommun Hardware Co.*, 7 Ct. Cust. Appls. 353, T. D. 36904; *United States* v. *Irwin & Co.*, 7 Ct. Cust. Appls. 360, T. D. 36906; *United States* v. *Wiebusch & Hilger*, 7 Ct. Cust. Appls. 364, T. D. 36907; *United States* v. *Stiner & Son*, 7 Ct. Cust. Appls. 485, T. D. 37105; *Togasaki & Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 463, T. D. 40667.

For the reasons stated the judgment of the court below is *reversed*.