FRANK P. DOW CO., INC. *v.* UNITED STATES (No. 3634)[1]

---

United States Court of Customs and Patent Appeals, November 28, 1933

*Curie, Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellant.
*Charles D. Lawrence*, Assistant Attorney General, for the United States.

[Oral argument October 12, 1933, by Mr. Isenschmid and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding certain electric vacuum cleaners and electric floor polishers dutiable as household utensils at 40 per centum ad valorem under paragraph 339 of the Tariff Act of 1922, as assessed by the collector at the port of San Francisco, rather than as machines at 30

per centum ad valorem under paragraph 372 of that act, as claimed by appellant.

The competing paragraphs, so far as pertinent to the issues here involved, read:

PAR. 339. Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for; * * * composed wholly or in chief value of copper, brass, steel, or other base metal, not specially provided for, 40 per centum ad valorem; and in addition thereto, upon any of the foregoing articles containing electrical heating elements as constituent parts thereof, 10 per centum ad valorem.

PAR. 372. * * * all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem: * * *

It is conceded by counsel for appellant that the electric vacuum cleaners are chiefly used in the household. It is contended, however, that the evidence of record establishes that the electric floor polishers are not chiefly so used; that the involved articles are machines; that they are not utensils within the common meaning of that term; that, if it should be held that they are utensils, nevertheless, they are not covered by paragraph 339, because, it is claimed, that paragraph is limited to "*hollow ware* and *flat ware*, including articles *of that kind* which are also 'table, household, kitchen, and hospital utensils,'" as manifested by the legislative history of that paragraph.

It is further contended by counsel for appellant that, if the involved articles are covered by the provisions of each of the involved paragraphs, they are more specifically provided for as machines, under paragraph 372, than as household utensils, under paragraph 339. In support of that proposition, counsel for appellant contend that—

The provision for "all other machines" in paragraph 372, we submit, is just as specific as the provision for "sewing machines" in the same paragraph, for, under a well-settled rule of construction, it is to be interpreted as if the word "machine" were preceded by the particular name of the machine to which it is applicable. In other words, as if the provision read (as applicable to the merchandise at bar) "vacuum cleaning machines" and "floor polishing machines."

Although it is contended in the brief of counsel for the Government that the involved articles are not machines, that claim was withdrawn by counsel for the Government at the time of oral argument in this court, and it was conceded, and properly so, we think, that the involved articles are machines within the common understanding of that term. The Government contends, however, that the involved articles are chiefly used in the household; that they are "household utensils" within the purview of paragraph 339, and, as such, are more specifically provided for in that paragraph than as machines under the provisions of paragraph 372.

The court below, in an opinion by Dallinger, Judge, aptly described the involved articles as follows:

The testimony discloses that the vacuum cleaner, represented by exhibit 1 herein, is operated by an electric motor which is a part of its mechanism; that

the motor is connected with a shaft with three turbines which revolve, thus creating a suction which extracts dirt and picks up small particles; and that such use constitutes the primary function of the vacuum cleaner; that the latter may also be employed to purify the air in a room by inserting in the exhaust end a chemically treated canton flannel pad; that, by reversing the machine and taking advantage of the exhaust as well as of the intake, a sprayer may be attached to spray insecticides; that the same attachment may be utilized to spray paint; that the device may also be employed in moth prevention and eradication through an attachment known as an incentor, which contains a flaky crystal substance, being fastened to the reverse end of the machine. These five attachments are in evidence herein as exhibits A, B, C, D, and E, respectively, and they are the only ones imported with the vacuum cleaners and perform the general fundamental functions thereof.

\* \* \* \* \* \* \*

The testimony also shows that the electric floor polisher represented by exhibit 2 is equipped with an electric motor the shaft of which is connected with a rubber belt which drives three sets of brushes; that one set cleans the floor, another spreads thereon wax, either in liquid or hard form, and the third polishes the floor after the wax has been spread thereon. The motor, like that in the vacuum cleaner, is of one-fifth horse-power capacity.

and held that they were utensils within the common meaning of that term; that the evidence failed to overcome the presumption of correctness of the collector's decision that they were chiefly used in the household; that they were, therefore, "household utensils," and, applying the doctrine of use frequently resorted to by the courts in the construction of tariff statutes in order to ascertain the legislative purpose, more specifically provided for as such in paragraph 339, than as machines under the provisions of paragraph 372. As authority for its holding, the court cited the following cases: *Oscar H. Pohl* v. *United States*, Abstract 3759, 52 Treas. Dec. 559, wherein it was held by the Customs Court that meat grinders, chiefly used in the household, were dutiable as kitchen or household utensils under paragraph 339 of the Tariff Act of 1922; and that other meat grinders, chiefly used in "butcher shops," were dutiable under the provisions for all other machines contained in paragraph 372 of that act; *G. W. Sheldon & Co.* v. *United States*, Abstract 2088, 51 Treas. Dec. 1096, wherein it was held by the same court that certain "Graters for potatoes and other vegetables, fitted to screw on table or sink, for use in family kitchens," although they might well be covered by the provisions for all other machines, contained in paragraph 372 of the Tariff Act of 1922, were more specifically provided for as kitchen utensils, under paragraph 339 of that act; *United States* v. *Kimball Dental Mfg. Co.*, 18 C. C. P. A. (Customs) 289, T. D. 44502, in which case this court held that certain dental burs, used by dentists in conjunction with electrically operated engines, were dutiable as dental instruments under paragraph 359 of the Tariff Act of 1922, rather than as parts of machines under paragraph 372 of that act. In its decision in that

case, the court, in an opinion by Graham, P. J., among other things, said:

Even were we to assume that the imported articles are parts only, the court is of the opinion that the devices or engines with which these burs are used may also properly be considered as dental instruments. * * * The distinction between dental engines and hand-operated dental tools is one which was not made by the Congress, and no reason is apparent why we should judicially make it.

It having been conceded by counsel for the parties that the involved articles are machines, the first question to be determined is whether they, the question of commercial designation not having been raised, come within the common meaning of the term "utensil." We quote dictionary definitions of that term:

*Utensil, n.* An instrument or vessel, esp. one used in a kitchen or dairy. (Webster's New International Dictionary.)

*Utensil, n.* Something that is used; a thing serving a useful purpose; formerly, a thing of varied use; as, *utensils* of war or observation; now, more especially, an implement or vessel for domestic or farming use; as kitchen *utensils*. (Funk & Wagnalls' New Standard Dictionary.)

*Utensil, n.* An instrument or implement: as, *utensils* of war; now, more especially, an instrument or vessel in common use in a kitchen, dairy, or the like, as distinguished from agricultural *implements* and mechanical *tools*. (Century Dictionary & Cyclopedia.)

The terms "instrument" and "implement" are defined as follows:

*Instrument, n. 2.* A material thing or mechanical device for performing work or producing an effect; tool; utensil; implement; as, a mechanic's *instruments;* astronomical *instruments*. (Webster's New International Dictionary.)

*Implement, n. 1.* That which fulfills or supplies a want or use; esp., an instrument, tool, or utensil used by man to accomplish a given work; as, the *implements* of trade, of husbandry, or of war. (Webster's New International Dictionary.)

*Instrument, n. 1.* A means by which work is done; an implement or tool, especially an implement or mechanism for scientific or professional purposes, as distinguished from a device, tool, or machine for industrial use; figuratively, any means of accomplishment; as, the hands are *instruments* of the will.

*Implement, n. 1.* An instrument used in work, especially manual work; a tool or a utensil; as, the *implements* of husbandry; the *implements* of warfare. (Funk & Wagnalls' New Standard Dictionary.)

It will be observed from the foregoing definitions that the terms "utensil," "instrument," and "implement" may be, and frequently are, used interchangeably.

In the case of *Richardson Co.* v. *United States*, 8 Ct. Cust. Appls. 179, T.D. 37289, this court held that heavy-duty tractors, chiefly used for agricultural purposes, although machines, were agricultural implements, and that carbureters, to be used as parts of such tractors, were free of duty as parts of agricultural implements under paragraph 391 of the Tariff Act of 1913.

In paragraphs 391 of the Tariff Act of 1913 and 1504 of the Tariff Act of 1922, the Congress provided for such ponderous machines as mowers, threshing machines, cotton gins, and machines for use in the

manufacture of sugar, as agricultural implements, thereby recognizing, at least for the purpose of those paragraphs, that such machines were agricultural *implements*.

We have hereinbefore called attention to the case of *United States* v. *Kimball Dental Mfg. Co.*, *supra*, wherein it was held that certain "devices or engines" were dental instruments.

In the light of the foregoing considerations we are of opinion that the involved articles clearly come within the common meaning of the term "utensil."

The second question requiring our consideration is whether the imported articles are *household* utensils. The answer to that question depends upon the use to which those articles are put. Are they used chiefly or principally in the household? If so, they are, in a tariff sense, household utensils. It is conceded by counsel for appellant that the electric vacuum cleaners are chiefly so used. It is contended, however, that the electric floor polishers are not chiefly so used.

The collector classified the imported articles as household utensils, and assessed them for duty under paragraph 339. The legal presumption from such classification is that he found them to be used principally in the household. Accordingly, it was incumbent upon the importer, on the trial in the Customs Court, to overcome that presumption by competent evidence.

The witness R. C. Randolph, sales manager for the importer, Electrolux, Inc., in charge of the "Eastern District," testified that the electric floor polishers were sold for use in "dance halls, large apartments, bowling alleys, [and] general assembly halls." When asked whether these particular machines were sold by his concern for use in private houses, or apartments, he said: "Very seldom, occasionally." He testified, however, that his information was limited to that portion of the United States extending from "Minneapolis to Boston, to St. Louis, and to Washington." Whether they were used chiefly in households or otherwise outside of his district does not appear, and, so far as it appears from the record, a large majority of the total sales in the United States may have been made outside of that territory.

Accordingly, we agree with the conclusion reached by the court below that appellant has wholly failed to establish that the chief use of the electric floor polishers was not in households, as held by the collector. We must hold, therefore, that the involved articles are household utensils. Are they household utensils within the purview of paragraph 339? Counsel for appellant insists that they are not; that the legislative history of paragraph 339 indicates clearly that the Congress intended to limit the operation of that paragraph to "hollow

ware and flat ware, including articles of that kind which are also 'table, household, kitchen, and hospital utensils.' "

Paragraph 134 of the Tariff Act of 1913, the predecessor of paragraph 339, *supra,* provided for—

Table, kitchen, and hospital utensils *or other similar* hollow ware composed of iron or steel, * * * table, kitchen, and hospital utensils *or other similar hollow ware* composed wholly or in chief value of aluminum * * *. (Italics ours.)

Obviously, as was said in the case of *United States* v. *Ellis Silver Co.,* 16 Ct. Cust. Appls. 570, T. D. 43297, paragraph 134 of the Tariff Act of 1913, so far as it related to table, kitchen, and hospital utensils, was limited to such utensils as were of the character of hollow ware.

Our attention is called by counsel for appellant to Senate Amendment No. 472, which is explained in the conference report of September 14, 1922. We quote therefrom:

*Amendment No. 472:* The House bill limited the hollow or flat ware provided for in paragraph 339 *to hollow or flat ware similar to table, household, kitchen, and hospital utensils* when composed of (1) aluminum or (2) iron or steel and enameled or glazed with vitreous glasses. The Senate amendment removes this limitation *so that all hollow and flat ware will be dutiable under the paragraph* at the rates provided; and the House recedes. (Italics ours.)

It is argued by counsel for appellant that the quoted excerpt from the conference report plainly indicates that the Congress intended to limit the provision for "table, household, kitchen, and hospital utensils," contained in paragraph 339, to such as were hollow or flat ware. We are not of that opinion.

As it passed the House of Representatives, H.R. 7456, paragraph 339, so far as pertinent to this discussion, read:

Table, household, kitchen, and hospital utensils, and similar hollow or flat ware, not specially provided for * * *.

It will be observed that, whereas paragraph 134 of the Tariff Act of 1913 provided for "Table, kitchen, and hospital utensils *or other similar hollow ware,*" paragraph 339, as it passed the House of Representatives, read: "Table, household, kitchen, and hospital utensils, *and similar* hollow or flat ware." (Italics ours.) Contrasting the quoted provisions, it is apparent that the hollow ware provided for in paragraph 134, *supra,* was limited to such as was of the character of table, kitchen, and hospital utensils, and that the provisions for table, kitchen, and hospital utensils, were limited to articles having the character of hollow ware. However, paragraph 339, in the form in which it passed the House of Representatives, did not limit the provision for table, household, kitchen, and hospital utensils, to such as were of the character of hollow or flat ware but it did limit the provisions for hollow or flat ware to such as were of the character of table, household, kitchen, and hospital utensils.

In the light of these considerations, it is evident that Senate Amendment No. 472, which eliminated the word "similar," contained in H. R. 7456, paragraph 339, as it passed the House of Representatives, referred to in the quoted excerpt from the conference report, wherein it was stated that the purpose of the Senate amendment was to remove the limitation placed upon the provisions for hollow or flat ware by the "House bill," "so that all hollow and flat ware will be dutiable under the paragraph at the rates provided," was merely intended to further distinguish between table, kitchen, and hospital utensils, and hollow and flat ware, and to extend the operation of the paragraph to include all hollow and flat ware, not specially provided for, whether or not similar to table, household, kitchen, and hospital utensils. Furthermore, the language of paragraph 339 clearly evidences, we think, an intention on the part of the Congress to provide therein for table, household, kitchen, and hospital utensils, not specially provided for, and, in addition thereto, for hollow and flat ware, not specially provided for. We conclude, therefore, that the involved articles are household utensils, within the purview of paragraph 339.

In the case of *United States* v. *Ellis Silver Co.*, 16 Ct. Cust. Appls. 570, T.D. 43297, this court considered the dictionary definitions of the terms "hollow ware," "utensils," and "vessels," and the legislative history of the provisions of paragraph 339, *supra*, and held that the provisions for hollow or flat ware were intended to be limited to articles having the "character of utensils, designed and used chiefly for utilitarian purposes." The decision in that case was based upon the record there before us. Furthermore, our attention was not there called to the explanation of Senate Amendment No. 472, *supra*, contained in the conference report, now, for the first time, presented to us for consideration. The construction of paragraph 339, above referred to, was approved and followed in the case of *United States* v. *Friedlaender Co.*, 21 C.C.P.A. (Customs) 103, T.D. 46445.

It is made clear by the explanation of the Senate amendment contained in the conference report, that our holding in the *Ellis Silver Co.*, and *Friedlaender Co.*, cases, to the effect that it was the intention of the Congress to limit the provisions for hollow or flat ware to articles "designed and used chiefly for utilitarian purposes," was erroneous.

But one question remains to be determined. Which is the more specific of the two competing provisions—the provision for all other machines, not specially provided for, contained in paragraph 372, *supra*, or the provision for household utensils, not specially provided for, composed in chief value of base metal, contained in paragraph 339, *supra*?

Assuming, for the purpose of this discussion, that the provision for all other machines, not specially provided for, contained in paragraph 372, "is equivalent to an enumeration of every machine, not otherwise specially provided for by name," as argued by counsel for appellant, citing as authority for such construction the case of *United States* v. *Hillier's Son Co.*, 14 Ct. Cust. Appls. 216, T.D. 41706, a like construction should be placed upon the provision for "household utensils," contained in paragraph 339, for each of the competing provisions is descriptive of a class of articles. Accordingly, if this were done, and electric vacuum cleaners and electric floor polishers were provided for by name as "household utensils," and, also, as "machines," those chiefly used in the household, under the doctrine of chief use, would be more specifically provided for under paragraph 339, whereas, those not chiefly so used, unless more specifically provided for elsewhere, would be dutiable under paragraph 372.

For the reasons herein stated, we are of opinion that the court below reached the right conclusion, and its judgment is *affirmed*.

GRAHAM, Presiding Judge, made the following additional observations:

I agree with all that has been said by the court in the preceding opinion by Judge Hatfield. In the *Ellis Silver Co.* case, *supra*, the court decided the matter presented, correctly, I believe, on the record then before it. Counsel for both sides in that case entirely failed to call the attention of the trial court, and of this court, to the Senate amendment and conference report now found to be so vital to the decision of the case at bar. Again, in the *Friedlaender* case, *supra*, no reference was made by either party to these essential facts, and the *Ellis Silver Co.* case constituted *stare decisis*. This case, also, was correctly decided on the record then before us.

Now, for the first time, that legislative history is called to our attention, a circumstance so potent as to make it necessary for the court to arrive at a different conclusion than that expressed in the *Ellis Silver Co.* and *Friedlaender* cases, on one of the points involved therein. Failure to fully present the issues in the cited cases led the court to a conclusion which it would not have reached had it had the facts before it which it now has.