(C. D. 543)

GEO. S. BUSH CO., INC., v. UNITED STATES

United States Customs Court, Second Division

(Decided October 20, 1941)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence*, of counsel) for the plaintiff.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Portland, Oreg., brought to recover certain customs duties alleged to have been improperly exacted on a particular importation invoiced and entered herein as a "tulip grading machine." Duty was levied thereon at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as a machine not specially provided for. It is claimed that the said mechanism is properly entitled to free entry under paragraph 1604 of said act as an agricultural implement.

The plaintiff introduced in evidence the testimony of Howard Wilson, the only witness herein. He testified that he is a farmer employed by L. H. Vaughan who operates a tulip farm and who

also is the president of Vaughan's Seed Store. The witness then described the imported machine as follows:

The working mechanism consists of several plywood pieces that have had holes drilled through them. In most cases these holes are round, and vary in size, and these screens, they are called grading screens by the trade, they are superimposed in a frame, so that the screens with the large holes are in the top of the frame, and they progress with smaller sized holes in screens farther down, so that as bulbs fall or pass over the screen, the smaller bulbs will fall through the holes, and the larger bulbs will pass on through and go into a separate compartment, and this frame that holds the screen is driven by a cam and an electric motor.

\* \* \* \* \* \* \*

I feel it isn't suitable for industrial uses, because it is constructed of light material, and it is for handling, the whole purpose is to handle the product carefully, because bulbs are quite soft. They have tissues that are easily injured. This plywood screen is covered with a rubber facing that is intended to cut down the amount of bruising of these bulbs, and of course the holes in the grading screens are made and calibrated for grading bulbs. They are graded into standard sizes that are used in the bulb trade, especially in Europe.

The witness mentioned tulip, bulbous iris, narcissus, hyacinth, lily, and crocus as some of the bulbs susceptible of grading in this machine. On his particular farm, he said, 50 acres were devoted to tulip bulbs planted in beds (Dutch style), 12 acres to narcissus, and 3 acres to iris. He testified that during the present year his farm produced 9 million tulip bulbs, of which 1½ million were sold, but that prior to April, 1939, he had never seen any machine substantially similar to that here imported; and that he knew of no other use therefor than that herein mentioned.

The facts being undisputed, there merely remains to be determined this legal question: Is the instant machine an agricultural implement within the meaning of said paragraph 1604? The pertinent provisions of said paragraph are substantially similar to those contained in paragraph 391 of the Tariff Act of 1913, under which arose the case of *United States* v. *Boker & Co.*, 6 Ct. Cust. Appls. 243, T. D. 35472, the decision which judicially enunciates what constitutes an agricultural implement in the tariff sense. After quoting at length the meaning of "agriculture" as set forth in authoritative dictionary definitions thereof, the court said:

While, therefore, "agriculture" in its broad application may extend into and include elements of horticulture, viticulture, arbor culture, and other *allied* industries and pursuits, in its primary significance it extends to and embraces only those parts of all such as pertain to human and incidental animal subsistence—the substantial requirements of life (food) and possibly man's comfort (raiment), and not the merely pleasurable pursuits; the necessities and not the essentially pleasurable or ornamental.

The language of paragraph 391 illustrates and confirms this view. \* \* \*. *There is no implement enumerated within the paragraph that is not devoted to the production of food or raiment for man, and there is none so enumerated that is employed in his other pursuits.*

\* \* \* \* \* \* \*

Apt illustration is afforded by this appeal. The articles are so-called "hedge shears." Hedges are purely ornamental, whether on the farm or about the city home. They do not contribute to the subsistence of man or beast directly or indirectly. Whether or not these so-called "hedge shears" are within paragraph 391 depends upon the evidentiary fact of whether or not they are chiefly used for trimming purely ornamental hedges and shrubbery or the *subsistence productions* of the *agriculturist.* * * * [Italics ours.]

After thus making clear the Congressional limitation to be ascribed to the language of the paragraph, the court then proceeded to enunciate the rule which must govern the test of classification as to whether or not a given article may be designated as an agricultural implement in the tariff sense. The court said:

All these considerations imply and necessitate that the use of the implement must determine its classification whether or not an agricultural implement within the paragraph, and that that use, and the determinative fact, is chief use.

And thereafter, in a long line of decisions, the rule so enunciated has been consistently followed. For instance, in the very same volume is reported the case of *United States* v. *Tower*, 6 Ct. Cust. Appls. 562, T. D. 36199, which involved the question of the tariff status of certain lawn rakes. Of such rakes the court said:

It is clear from the present record that the rakes now in question serve no purpose in the production of food from the soil, nor in the raising of domestic animals thereon. They are used as implements for the improvement of ornamental lawns only, and therefore fall directly within the terms of the foregoing decision.

And this court, in *Hezekiah King's Sons* v. *United States*, T. D. 37570, G. A. 8145, 34 Treas. Dec. 233, a case which also arose under paragraph 391 of the 1913 law, had this to say of some of the articles involved therein:

As to the propagating scissors, syringes, edge cutters, flower gatherers, grass shears, pruning saw, etc., the testimony is not sufficient to show that they are chiefly employed in agricultural pursuits which pertain to the production of food or clothing. On the contrary, we are satisfied that they are used solely in horticultural operations of the pleasurable or ornamental kind. The court's ruling in the *Boker* case, *supra*, clearly excludes that class of articles from the provisions of paragraph 391.

Also, in *George Lawler* v. *United States*, Abstract 2383, 51 Treas. Dec. 1141, a certain apparatus used for spraying and sterilizing narcissus bulbs was held to be a horticultural implement and as such not entitled to free entry as an agricultural implement.

Again, in *C. H. Langley* v. *United States*, T. D. 36217, G. A. 7869, 30 Treas. Dec. 350, certain lawn mowers and turf cutting machines, specially designed for use in cutting grass and sod on golf courses, lawns, and in parks, were held not to be agricultural implements, on the authority of the decision in the *Boker* case, *supra*. Of those articles, the court said:

It requires no reasoning to show that the present merchandise, which is specially designed for and almost exclusively employed in connection with the upkeep and

maintenance of golf courses, can in no sense be claimed to even remotely contribute toward the raising of crops which supply food or clothing for man. On the contrary, it is too clear that these mowers and turf cutters, like the hedge shears in the *Boker* case, *supra*, are precisely within the category of articles which the court held were not agricultural implements within the congressional meaning of that term, for the reason that they perform operations the results of which contribute merely to the pleasure and to the aesthetic tastes of man. Far from being agricultural implements, the testimony shows that their chief use is in keeping in good condition golf greens, thus adding to the pleasure and enjoyment of the devotees of the game of golf.

Another case which arose under the 1913 law, and which appears to be squarely decisive of the present issue, is that of *Wakem & McLaughlin* v. *United States*, Abstract 44205, 39 Treas. Dec. 505. Concerning the machines there involved we said:

Inasmuch as the testimony satisfactorily shows that these machines are constructed, designed and exclusively employed in sorting flower bulbs into uniform sizes, under the prevailing decisions on the subject the machines are not agricultural implements. They are, therefore, not included within the class of articles contemplated by the provisions of paragraph 391. In *United States* v. *Boker* (6 Ct. Cust. Appls., 243, T. D. 35472) the articles covered by said paragraph were limited to those which "pertain to human and incidental animal subsistence—the substantial requirements of life (food) and possibly man's comfort (raiment), and not the merely pleasurable pursuits; the necessities and not the essentially pleasurable or ornamental." The present machine cannot be employed in sorting or otherwise handling food crops. An attempt to show by testimony that tomatoes might be assorted according to size through these machines proved a failure. The single witness who appeared on behalf of the importers, and who has been using these machines for the importers, and who has been using these machines for the past five years, concedes that they are designed and suitable only for the purpose of sorting flower bulbs, and that any attempt to sort tomatoes by this machine would result in mashing them. We are satisfied from the testimony that the use of these machines is limited to sorting flower bulbs. We therefore hold the same to be excluded from paragraph 391 as they are of a class of articles not contemplated therein.

It is unnecessary to cite the many subsequent decisions of like tenor. Indeed, we do not know of any case wherein the enunciated rule was not adhered to. It was certainly followed in each of the six decisions cited in the brief of counsel for the plaintiff as supporting their contention. In none of them was a horticultural article held to be an agricultural implement. In each instance the merchandise which was classified as an agricultural implement was shown to be chiefly employed in the production of food or raiment for man. For example, the vineyard and orchard shears in *United States* v. *Ducommun Hardware Co.*, 7 Ct. Cust. Appls. 353, T. D. 36904; the wool presses used exclusively on sheep ranches to press the wool cut from the sheep into bales preparatory to transporting it to market, involved in *J. C. Findlay* v. *United States*, T. D. 37964, G. A. 8246, 36 Treas. Dec. 283; the fruit clippers in *Charles C. Robinson* v. *United States*, Abstract 9239, 56 Treas. Dec. 734; the beet and strawberry planters,

beet weeders, and strawberry transplanters in *W. J. Byrnes & Co.* v. *United States*, Abstract 24885, 64 Treas. Dec. 821; and the machine for sorting peas and beans for seed purposes in *D. Landreth Seed Co.* v. *United States*, C. D. 141, 2 Cust. Ct. 272. The machine in the last-cited case was shown to be used exclusively on farms belonging to the plaintiff-corporation for sorting peas or beans raised by said plaintiff for seed purposes.

Obviously, then, the decisions cited by counsel for the plaintiff in their brief fully support the action of the collector in excluding the present machine from classification under paragraph 1604 of the Tariff Act of 1930 as an agricultural implement, and we so hold.

On the established facts and the law applicable thereto it follows that the involved mechanism which is described on the invoice as a "tulip grading machine" is properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as a machine not specially provided for, as classified by the collector. All claims of the plaintiff are therefore overruled and the decision of the collector is affirmed. Judgment will be rendered accordingly.