(C. D. 962)

SELSI CO., INC. *v.* UNITED STATES

## United States Customs Court, Second Division

(Decided November 2, 1945)

*Lane, Young & Fox (William H. Fox* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Richard H. Welsh,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

LAWRENCE, Judge: In *United States* v. *L. Oppleman, Inc.,* 25 C. C. P. A. (Customs) 168, T. D. 49271, our appellate court held that certain aneroid barometers, which had been classified by the collector of customs at the port of New York under paragraph 397 of the Tariff Act of 1930 as articles, not specially provided for, composed of metal not plated with platinum, gold, or silver, and not colored with gold lacquer, were, in the absence of a more specific designation, dutiable under paragraph 372 of said act as machines, not specially provided for, as claimed therein by the importer. The court found that said—

\* \* \* aneroid barometers \* \* \* operate in accordance with mechanical principles. That they are mechanical contrivances, having operating movable parts, such as springs, hairsprings, levers, chains, and diaphragms, without which parts and their coordinate-movements the articles would not function, cannot be seriously questioned. \* \* \*

The court was of the opinion that the question whether the articles were machines within the purview of paragraph 372, *supra,* did not depend—

\* \* \* upon the source of the force or energy which motivates them, but rather upon the character and operation of the articles themselves.

In the case now before us it is agreed between the parties to this litigation that the internal mechanism of the aneroid barometers, herein—

\* \* \* is similar in all material respects and operates the same in all material respects as the internal mechanism in the Aneroid barometers which were the subject of United States vs. L. Oppleman, T. D. 49271.

The instant case differs from the *Oppleman* case, *supra,* only in the respect that, although the barometers are here claimed by plaintiff to be machines, they have been classified for duty under paragraph 339 of said act as household utensils not plated, wholly or in chief value of base metal, and were assessed with duty at 40 per centum ad valorem. There was an additional duty of three-fourths of 1 cent per pound assessed upon these barometers under section 601 (c) (7) of the Internal Revenue Act of 1932 (61 Treas. Dec. 1264, T. D. 45751), as—

\* \* \* articles dutiable under the Tariff Act of 1930, not provided for heretofore in this paragraph, containing 4 per centum or more of copper by weight, 3 per centum ad valorem or ¾ of 1 cent per pound, whichever is the lower.

The propriety of the copper tax or duty is neither challenged nor even mentioned in the protest.

The sole question, therefore, submitted for our determination is whether the present aneroid barometers are dutiable as machines, as held in the *Oppleman* case, *supra*, or subject to classification as household utensils.

At the hearing two witnesses were called by the plaintiff; none appeared for the defendant.

The first witness, William A. Stumpe, testified that since its incorporation in 1941 he has been the secretary of the plaintiff; that its business is the importation of optical and meteorological instruments, a business in which he has had 36 years' experience; that from 1929 to 1940 he was connected with the original Selsi Co., and from 1913 to 1928 with Sussfeld, Lorsch & Co. and with Sussfeld, Lorsch & Schimmel, all in the same line of business.

He produced a sample of the aneroid barometers invoiced herein as item 1366/6'', which was received in evidence as exhibit 1, and testified that, except for certain immaterial differences in size and in the dial, exhibit 1 was representative of all of the aneroid barometers invoiced herein as items 1364, 1365, and 1366, whether 5-inch, 6-inch, or 8-inch in size; and that the mechanism of exhibit 1 is identical with that contained in all of said barometers.

The witness testified that he has been familiar with aneroid barometers like exhibit 1 for 30 years; that the single function performed by them is to indicate atmospheric pressure for use as an aid in forecasting impending weather conditions; that such a forecast cannot be made by the use of the aneroid barometer alone, but requires other instruments and information concerning wind velocity, wind direction, degree of humidity in the air, and the temperature out-of-doors. He stated that before using the barometer a reading of the prevailing atmospheric pressure is obtained from the weather bureau; that by means of a screw in the rear of its case, the barometer is set to coincide with such reading; and that thereafter the barometer will indicate such pressure, or weight of the air, which is the only thing it does do. He characterized exhibit 1 as an air automatic scale which will function whether placed indoors or outdoors.

He testified that in his 30 years' experience in selling these barometers throughout the country, the majority went to ship chandlers, marine supply houses, United States Weather Bureau, United States Coast Guard, United States Lighthouse Service, and various trades; that they are used on board ship, in the lighthouses, by the Coast Guard, in the school, and that occasionally he has seen one used in the home; but that the greatest number were employed in places other than homes; that the function performed by them is of practical value to meteorologists, ship operators, weather bureaus, the Coast Guard, the Light-

house Service, and in schools which teach the operative principle of the article; that to be of practical value in the home the householder would require information as to wind velocity, wind direction, relative humidity, and the rest of the factors necessary to forecast probable weather conditions. In such a case, he stated, the reading obtained from the aneroid barometer would aid the householder "to forecast impending weather outside of the home, of course."

The other witness, Alfred George Abbott, testified that he is the manager of a nautical equipment store, a business in which he has had 20 years' experience. Specifically, he is connected with the Kelvin & Wilfrid O. White Co. at 38 Water St., New York City; that the main business of the company is the purchase and sale of nautical instruments and the repair thereof; that from 1885 to 1919 he followed the sea, having been third and then second officer, master of a ship, first officer, and master; that he obtained an English Master's certificate in 1902 and an American certificate in 1907, and was in command of ships; that he was engaged on ships during all of the time he followed the sea, having sailed on probably 12 or 14 ships; that since he has been on shore he has been on approximately a couple of thousand ships; that in the course of his experience, both on ships and in his present business, he has become familiar with aneroid barometers during a period covering fifty-odd years, having used them personally and having seen them used; that with reference to barometers like exhibit 1 you merely set them at any time and watch the rise and fall of air pressure, and that to be safe one should always keep a record of such rise and fall; that when you obtain that information, and when you know what the wind is, and certain clouds, and things like that, you can foretell the weather; that it is impossible to forecast the weather using the barometer exclusively; that the aneroid barometer is always kept in the chart room of a ship, which is located in the navigator's quarters, on the bridge of the ship; that within his experience an aneroid barometer is part of the equipment absolutely required for the operation of ships; that it is also needed as an aid in weather forecasting any place where they forecast the weather, such as meteorological societies and weather bureaus; that in his present business he sells aneroid barometers like exhibit 1 about 99 per centum to the marine trade, and probably an occasional person not connected with the sea comes in and buys one; that in the course of his present business he goes aboard ships to adjust their compasses, and since 1919 he has been on a couple of thousand ships and on every one of them, in the chart room, during all of that period, he has seen an aneroid barometer like exhibit 1.

On cross-examination he stated that his experience as a navigator was not confined to steamships; that for 12 years he was on sailing

vessels; and that the aneroid barometer is absolutely necessary whether on a sailing vessel or a steamship.

On redirect examination he testified that the sole function of the aneroid barometer is to indicate air pressure; and that its only value is as an aid in weather forecasting.

The nature or character of exhibit 1 is not disputed. It is a machine that automatically determines the weight or pressure of the atmosphere, and by a hand on the face of a dial indicates whether the air pressure is falling or rising. *United States* v. *L. Oppleman, Inc.*, 25 C. C. P. A. (Customs) 168, T. D. 49271. But is it also a household utensil and dutiable accordingly, as classified by the collector, within the meaning of that term as judicially construed?

In *Frank P. Dow Co., Inc.* v. *United States*, 21 C. C. P. A. (Customs) 282, T. D. 46816, the court had before it the question of the relative specificity of the provision for machines, not specially provided for, in paragraph 372 of the Tariff Act of 1922, and the one in paragraph 339 of the same act covering household utensils. The articles there under consideration were vacuum cleaners and floor polishers, which were conceded to be machines. The first question submitted to the court for determination was: Are such machines "utensils" within the meaning of said paragraph 339? In answering that query in the affirmative, the court quoted various dictionary definitions of the words "utensil," "instrument," and "implement," and said:

It will be observed from the foregoing definitions that the terms "utensil," "instrument," and "implement" may be, and frequently are, used interchangeably.

For judicial and congressional confirmation of that view, we quote further from the last-cited decision:

In the case of *Richardson Co.* v. *United States*, 8 Ct. Cust. Appls. 179, T. D. 37289, this court held that heavy-duty tractors, chiefly used for agricultural purposes, although machines, were agricultural implements, and that carbureters, to be used as parts of such tractors, were free of duty as parts of agricultural implements under paragraph 391 of the Tariff Act of 1913.

In paragraphs 391 of the Tariff Act of 1913 and 1504 of the Tariff Act of 1922, the Congress provided for such ponderous machines as mowers, threshing machines, cotton gins, and machines for use in the manufacture of sugar, as agricultural implements, thereby recognizing, at least for the purpose of those paragraphs, that such machines were agricultural *implements*.

We have hereinbefore called attention to the case of *United States* v. *Kimball Dental Mfg. Co.*, *supra*, wherein it was held that certain "devices or engines" were dental instruments.

The court expressed the view that—

In the light of the foregoing considerations we are of opinion that the involved articles clearly come within the common meaning of the term "utensil."

The court then stated the next inquiry before it as follows:

The second question requiring our consideration is whether the imported articles are *household* utensils. The answer to that question depends upon the

use to which those articles are put. Are they used chiefly or principally in the household? If so, they are, in a tariff sense, household utensils. It is conceded by counsel for appellant that the electric vacuum cleaners are chiefly so used. It is contended, however, that the electric floor polishers are not chiefly so used.

The collector classified the imported articles as household utensils, and assessed them for duty under paragraph 339. The legal presumption from such classification is that he found them to be used principally in the household. Accordingly, it was incumbent upon the importer, on the trial in the Customs Court, to overcome that presumption by competent evidence.

On the subject of the sufficiency of the proof submitted, the appellate court said—

* * * we agree with the conclusion reached by the court below that appellant has wholly failed to establish that the chief use of the electric floor polishers was not in households, as held by the collector. We must hold, therefore, that the involved articles are household utensils. * * *.

The court then propounded and answered the query involving the matter of relative specificity as follows:

But one question remains to be determined. Which is the more specific of the two competing provisions—the provision for all other machines, not specially provided for, contained in paragraph 372, *supra,* or the provision for household utensils, not specially provided for, composed in chief value of base metal, contained in paragraph 339, *supra?*

Assuming, for the purpose of this discussion, that the provision for all other machines, not specially provided for, contained in paragraph 372, "is equivalent to an enumeration of every machine, not otherwise specially provided for by name," as argued by counsel for appellant, citing as authority for such construction the case of *United States* v. *Hillier's Son Co.,* 14 Ct. Cust. Appls. 216, T. D. 41706, a like construction should be placed upon the provision for "household utensils," contained in paragraph 339, for each of the competing provisions is descriptive of a class of articles. Accordingly, if this were done, and electric vacuum cleaners and electric floor polishers were provided for by name as "household utensils," and, also, as "machines," those chiefly used in the household, under the doctrine of chief use, would be more specifically provided for under paragraph 339, whereas, those not chiefly so used, unless more specifically provided for elsewhere, would be dutiable under paragraph 372.

We regard that decision as here controlling. The evidence herein conclusively establishes that the involved aneroid barometers are not chiefly or principally used in the household. They are, therefore, not properly dutiable under paragraph 339 of the Tariff Act of 1930 as household utensils, as classified by the collector. And since they do not appear to be more specifically provided for elsewhere than in paragraph 372 of said act, we hold them to be properly dutiable at the rate of 27½ per centum ad valorem under the latter paragraph as machines, not specially provided for, as alleged by the plaintiff. That claim is therefore sustained and the decision of the collector is reversed.

Judgment will be entered accordingly.